ILLINOIS CENTRAL RAILROAD COMPANY *v.* ANN SWANSON.

[46 South., 83.]

**1.** PRACTICE. *Appearance. Motion to quash summons or return. Code* 1906, § 3946.

Where a summons or citation or the service thereof is quashed on motion of a defendant he gains a continuance of the cause but nothing else, since, as provided by Code 1906, § 3946, his appearance for the purpose of the motion gives the court jurisdiction of his person for all purposes of the case.

**2.** SAME. *Code* 1906, § 3947. *Appeal. Justice's court. Circuit court.*

Under Code 1906, § 3947, so providing, where a judgment or decree is reversed on the appeal of a defendant for want of service or defective service of process, new process is unnecessary and the defendant will be presumed to have entered his appearance to the cause in the court from which the appeal was taken when the mandate shall be filed therein; an appeal by a defendant from

a judgment rendered by a justice of the peace, gives the circuit court jurisdiction of defendant's person for all purposes of the case.

**3.** CARRIERS. *Authority of agent. Railroads. Place of delivery. Unauthorized stipulation in bill of lading.*

Where a shipper, knowing that the railroad company had no station of switching facilities at a crossing of certain streets in a city on its line, induced the receiving local agent of the company to depart from the scope of his authority and write into the bill of lading that the car containing the goods should be switched and stopped at the street crossing, he cannot recover damages for a failure by the carrier to deliver the freight there.

**4.** SAME. *Burden of proof.*

A plaintiff, suing a railroad company for failure to deliver freight at a point other than a regular station, has the burden of proof to show that his contract for such delivery was made with an agent having authority to make it.

FROM the circuit court of Madison county.

HON. DAVID M. MILLER, Judge.

Mrs. Swanson, appellee, was plaintiff in the court below, and the railroad company was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The appellee shipped a car load of hay from Way, Miss., to New Orleans, La. The defendant's agent gave appellee the bill of lading, in the usual form, except that it had written in the corner: "Shipper's order, notify R. W. Barrett, New Orleans, Louisiana. Ship to Levee and Washington streets." The hay reached New Orleans in due time in good condition, and was switched on one of the side tracks of the appellant known as the "Valley Yard," and Barrett, the consignee, notified that the hay was there. Barrett refused to call for the hay, claiming that he had contracted to have it delivered at Levee and Washington streets, and unless it was delivered there he would not take it. To this appellants replied that they had no depot, nor switch nor facilities for handling the hay at Levee and Washington streets. The hay remained at the Valley yard for a long time and was not claimed by the consignee. It was afterwards sold, and the proceeds applied to the payment of

freight and storage.   Afterwards appellee brought suit against appellant for damages, alleging in the declaration that appellant had contracted with her to deliver the hay to her at Levee and Washington streets, and that appellant had failed to perform its contract, and that as a result of this breach the consignee had refused to purchase the hay, whereby appellee was damaged.   The appellant denied the contract, and offered evidence to show that at the time the appellee requested the agent at Way, Miss., to consign the hay to Levee and Washington streets, the agent told appellee it had no switch, nor depot, nor yards at that point, nor had he any authority to make a contract to deliver the goods at that point.   Appellee, however, pursuaded the agent to write in the bill of lading what is claimed to be a contract to transport the goods to the point mentioned.

*Mayes & Longstreet,* for appellant.

The defendant, the appellant, at the trial, shows by overwhelming evidence that it had neither station house nor switch of any description, at Washington and Levee streets; also, that its regular place in New Orleans for the delivery of hay was at its Poydras street depot, and that the defendant offered to make delivery to the consignee there, but that he, the consignee, refused to take the hay.

That these are the real facts of the case was so conclusively established by testimony adduced at the trial, as to convince any man; but in spite of this, the jury brought a verdict for the plaintiff showing, by so doing, that they had totally disregarded the court's instructions.

A contract to transport goods to a certain point on a railroad company's road other than a regular station, made by a local freight agent, not having authority to make such contract, is no more binding upon the railroad company than would be a contract to receive goods at a point upon the company's road other than a regular station made by such an agent not having author-

ity to make such a contract, and that would not be binding at all. 6 Cyc., 431, n. 77.

There is still another reason why the judgment of the court below should be reversed. It is this: It is a well settled rule that a contract made for carrier by an agent not having authority to make such a contract, will not bind the carrier if at the time of the making of the contract the shipper knew that the agent had no authority to make the contract. 6 Cyc. 431, par. 5.

In the case at bar Swanson applied to the agent of the Illinois Central Railroad Company to make a contract for the transportation of certain goods from Way, Mississippi, to New Orleans, Louisiana. In addition to that, Swanson asked the agent to accept the goods for transportation to a certain point in New Orleans other than a regular station upon the company's road. The agent thereupon informed Swanson that he had no authority to make a contract for the railroad to transport goods to this certain point in New Orleans. The agent was persuaded, however, to write, or rather he did write into the bill of lading what the appellee claims was a contract to transport said goods to said certain point above mentioned. Is the railroad company bound by that contract? No, indeed! This shipper deliberately chose to rely upon a contract made with an agent whom he knew had no authority to make it and he was damaged. He sued the railroad and because a jury were either biased or ignorant, he succeeded in getting a verdict against the railroad company.

These being the facts, surely this court will not permit him to recover damages from the railroad company.

*Pratt & Reid,* for appellee.

The sole ground of action in this case is the failure of the railroad to deliver a carload of hay at the point alleged to have been agreed upon in the bill of lading.

It is claimed by the plaintiff that the point of delivery was Levee and Washington streets. It is denied by the defendant that it agreed to deliver at that point.

The first question is, what was the contract as shown by the evidence in the case. The bill of lading is the best evidence and parol evidence is not admissible to vary or contradict its terms.

It is claimed by the defendant that the endorsement on the bill of lading "To be switched to Levee and Washington St.," was no part of the contract.

Now the rule of construction of a bill of lading is: "The intention of the parties is to be gathered from the instrument as a whole; in case of doubt the bill of lading must be construed strictly against the carried. Written matter prevails over printed matter, and a memorandum on the margin is as valid as if written in the body of the bill."

The above is quoted *verbatim* from 4 Elliot on Carriers, sec. 1424, and authorities referred to to sustain the text.

If we rely on the terms of the bill itself it is clear that adopting the above rules of construction, the contract was to deliver at Levee and Washingon streets.

The defendant introduced parol evidence to show that the endorsement was simply intended as the address of the consignee Barrett; and also testimony tending to show that said endorsement was obtained by fraud.

Now parol testimony is not admissible to contradict the terms of this or any other written contract.

Says Elliott on Carriers, Vol. 4, p. 2199, sec. 1415: "A bill of lading as a receipt may be explained or contradicted, but as a contract it must be construed according to its terms."

In construing bills of lading the courts usually treat that portion of the bill which acknowledges the delivery and acceptance of the goods as a receipt, and the rest as a contract. *Transportation Co.* v. *Furtherman,* 41 Am. St. Rep., 265; *Van Etten* v. *Newton,* 30 Am. St. Rep., 630 and note; *Davis* v. *Railroad Co.,* 44 Am. St. Rep., 852; *Manufacturing Co.* v. *Railway Co.,* 61 Am. St. Rep., 679.

It is well settled that evidence cannot be introduced to vary the carrying part of a bill of lading in the absence of mistake or fraud. *Manufacturing Co.* v. *Western Ry. Co.,* 67 Am. St.

Rep., 179, *McElveen* v. *Southern Railway Co.,* 77 Am. St. Rep., 371 and cases cited above.

"The bill of lading is not variable by parol; all negotiations are merged in the bill." 4 Elliott on Carriers, p. 2209, sec. 1423, n. 4.

Hence all testimony concerning the colloquy between Wilson and Swanson as to the point of delivery of the hay was clearly inadmissible except as it tended to show fraud on the part of Swanson in obtaining the endorsement on the bill: "Switch to Levee and Washington St."

Swanson and Wilson flatly contradicted each other on that point and the jury have passed on that question as was their province.

The station agent of the railroad is presumed to have authority in contracts for the shipment of goods to make any contract that the company itself could make, and the contract is binding upon the railroad unless it can be shown that the agent acted beyond the scope of his authority, and that the shipper knew that fact. 6 Cyc. 431, n. 77.

The presumption does not apply when the contract is to receive freight at some other point on the road than a station. 6 Cyc., 431, n 77.

The reason for the distinction is apparent. The public would have no reason to suppose that the agent at Canton or other place could have authority to contract concerning receiving of freight at Calhoon or Way, these points being obviously not within his jurisdiction.

But the public would have every reason to suppose that the agent at Canton, who received the goods for shipment, has authority to contract for the rate of freight and place of delivery, and such, we have seen, is the law.

It is a well established rule of law that a station agent may contract for delivery of freight at a specified place and within a specified time. 6 Cyc., 433, n. 89.

And the principal is liable, even though the agent exceeded

his authority, and even though the contract was impossible to perform. *Deeming* v. *Railroad Co.,* 2 Am. Rep., 267–276.

. It was held in the above case that the railroad was bound by the contract of a station agent to deliver within a certain time, although it was beyond the scope of his actual authority and although it was impossible under the circumstances to perform it.

6 Cyc., 433 says, an agent having authority to contract for the shipment of goods has apparent authority to contract for the delivery of goods at a specified time and a specified place, citing, *Stoner* v. *Railroad Co.,* 109 Iowa, 551; *Rudell* v. *Transit Co.,* 117 Mich., 568; *Gann* v. *Railroad Co.,* 72 Mo. App., 34.

WHITFIELD, C. J., delivered the opinion of the court.

This case was begun before a justice of the peace, where judgment by default, without personal service, was had against the appellant for the sum of $199. This judgment was rendered on the 22d of May, 1905, and an appeal taken to the circuit court. The record shows that at the July term, 1906, of the circuit court, a motion was made by the defendant to quash the original summons and the return of the officer thereon; that evidence was heard on that motion, and the motion was sustained; that the plaintiff then obtained leave of the court to amend the officer's return; that a motion was then made by the defendant to quash the amended return, which motion was sustained; that then, quoting from the record, "immediately thereafter the defendant made its motion to dismiss this suit and strike the same from the docket, because the court rendering the same had no jurisdiction, which was heard, and the court overruled the motion; that the defendant excepted to this action of the court;" and that thereafter the parties announced themselves for a trial, and a jury came and were accepted, and the case was tried. It will thus be seen that the question first presented for decision here is whether or not the court erred in overruling the motion to dismiss the suit for want of jurisdiction in the jus-

tice of the peace court, because it rendered a judgment by de-
fault in the absence of personal service.

Learned counsel for appellee make a strenuous effort to show
that what was done by the counsel for the appellant between the
appeal from the judgment of the justice of the peace and the
making of the motion to dismiss the suit in the circuit court
amounted to entering a general appearance. They say that a
careful inspection of the record will show that all steps in the
proceedings on the part of the appellant, such as entering the
name of opposing counsel, and the issuance of subpœnas for wit-
nesses by order of such counsel, notice to take depositions for the
appellant, and the taking of such depositions, and filing the
same, were taken before any motion to dismiss for want of juris-
diction was filed, and that it was only when the case was about
to be finally submitted to the jury that the plea to the jurisdic-
tion was interposed by appellant. We have examined and re-
examined the record with care on this point, and the record be-
fore us plainly shows that this motion to dismiss was made at
the July term, 1906, and acted on then, and that the case was
not tried before the jury until the January term, 1907. Learned
counsel for appellee say that at the January term, 1907, appel-
lant moved for security for costs. We do not find any such mo-
tion in this record, and we, of course, are controlled by the
record.

Quite an elaborate argument has been made in this court in
briefs of counsel on both sides with respect to the question
whether or not what was done by the railroad company in the
court below operated a general appearance to the action, and
numerous authorities are cited. All this learning and diligence
in the citation of authorities was wholly unnecessary, since the
matter is directly controlled by Annotated Code 1906, §§ 3946,
3947,—especially the first section. These sections are in the
following words:

"3946 (3447). *Motion to Quash Process an Appearance.*—
Where the summons or citation, or the service thereof, is
quashed on motion of the defendant, the case may be continued

for the term, but defendant shall be deemed to have entered his appearance to the succeeding term of the court.

"3947 (3448). *When an Appeal by Defendant an Appearance.*—Where a judgment or decree is reversed on appeal taken by defendant for the want of service, or because of defective service of process, a new summons or citation need not be issued or served, but the defendant shall, without such process or service, be presumed to have entered his appearance to the cause in the court from which the appeal was taken when the mandate shall be filed therein."

Under that section, of course, the motion to dismiss for want of jurisdiction was properly overruled; and this brings us to the case on its merits.

It is very satisfactorily shown by the testimony that the railroad company had no switch, no station, nor any delivering point at the corner of Levee and Washington streets, and, further, that the shipper knew that fact, and that the local agent of the company protested against writing in the bill of lading the direction: "To be switched to Levee and Washington streets." We understand the true rule on this subject to be that expressed in 6 Cyc., 431, note 77, which rule is thus stated: "But, where the contract was to receive goods at a place on the company's road other than a regular station, it was held that it was for the shipper to show that the contract was made with an agent having authority to make it. *Newport News, etc., R. Co.* v. *Reed,* 10 Ky. Law Rep., 1020." On the facts in this record it is perfectly clear that this local agent had no such authority, and that he knew he had no such authority, and that, knowing he had no authority, he protested against writing the bill of lading as insisted on by the shipper; and it is perfectly clear that the shipper knew, as stated above, that there was no regular station and no switch at the corner of Levee and Washington streets. On the law of the case, therefore, as applied to the facts, it is manifest that no verdict on the case made by this record can be allowed to stand.

Therefore the judgment is reversed, and the cause remanded.

*Reversed.*