CHARLES MOON et al., Appellees, v. CHICAGO, BURLINGTON & QUINCY RAILROAD, Appellant.

**RAILROADS: Agents—Authority Under Emergency.** The power in a railway agent to supervise both the "loading and refrigeration of cars" for the transportation of perishable products carries no implied power in such agent, *even in an emergency,* to enter into an agreement as to how certain damages to the products should be adjusted.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

OCTOBER 16, 1923.

ACTION to recover damages for injury to a carload of strawberries. Verdict for plaintiffs, and defendant appeals.—*Reversed.*

*Hughes & Dolan* and *Palmer Trimble,* for appellant.

*O'Harras, Wood & Walker,* for appellees.

FAVILLE, J.—Appellees' petition is in two counts. In Count 1 it is alleged, in substance, that the appellees delivered to the appellant a certain carload of strawberries, which were loaded at Montrose, Iowa, for transportation to Chicago, and that, while said strawberries were in the car at Montrose, and before the same had been properly braced for transportation, a freight crew in the employ of the appellant carelessly and negligently switched another car against the car in which said berries were loaded, and caused damage to said berries; and that thereupon an agent for the appellant company orally agreed with the appellees that the said berries should be consigned to Chicago, and there sold, and that appellant would pay to appellees the difference between $6.00 per crate and the amount, less expenses, which said berries brought on the market when sold. It is alleged that the berries were shipped and sold under this agreement, and that the difference between the amount which they brought and the alleged agreed price of $6.00 per crate was $990.50, for which judgment was asked in this count.

In the second count of the petition it is alleged that, after the strawberries in question were loaded in the car for transportation, the same were injured by the negligence and carelessness of appellant's employees in operating the switch engine, and that by reason thereof the berries were damaged, to appellees' loss in the sum of $990.50.

The answer, in addition to a general denial, specifically denied any authority on the part of the alleged agent to make the alleged contract; pleaded that the contract, if made, was void under the Interstate Commerce Law; and pleaded contributory negligence on the part of the appellees.

I. The first question that confronts us is with regard to the submission to the jury of Count 1.

It appears from the evidence that, in the latter part of the preceding winter or early spring, a Mr. Meinhardt came to Montrose, and the station agent of the appellant introduced him to the appellees and to others who were engaged in the business of raising strawberries. According to the testimony, he was introduced as "either the supervisor or superintendent of refrigeration" of the railroad. It appears that his object was "to have a general meeting of the growers called, to discuss the growing of strawberries and getting them to the car in the best shape." It appears that such a meeting was called, at which Meinhardt made a talk regarding the best way to handle berries and get them to the car, and at which he said he would be present at the time of shipment and personally look after the welfare of the growers, in helping to get the berries routed properly. It also appears that, at the shipping season, Meinhardt was in Montrose, and "came down and got in the car occasionally, and occasionally tested the temperature, to see to the cooling." It appears that the station agent introduced Meinhardt to one of the appellees as "the man who had charge of everything there." At the time the car in which the strawberries had been placed was struck and bumped by the operation of the switching crew, it appears that the crates of berries in the car, particularly at one end, were jolted from their position in the car some eight inches or more, and there was evidence that juice was coming from some of the boxes. It does not appear that any of the boxes were opened at the time, nor were the berries then inspected.

Appellees' contention is that, after the car had been so struck, they had a conversation with Meinhardt, who told appellees to ship the car to Weaver & Company, in Chicago, and that Meinhardt stated:

"I know the house well, and any loss that the Iowa Fruit Company sustains between what it sells for in Chicago and what it sold for here, we will pay it."

Thereafter, the car was billed to Weaver & Company. It is agreed that the berries had been sold at that time to buyers at Montrose at $6.00 per crate, and that, after the accident, said buyers refused to accept the berries. There is evidence tending to show that there was some talk about putting the agreement

referred to in writing, but this was never consummated. The evidence tends to show that at $6.00 per crate the value of the berries in the car was $2,520, and that the berries brought upon the market in Chicago, less expenses, $1,529.50. Recovery is sought on this count for the balance, being $990.50.

Meinhardt testified, as a witness, that he was ''supervisor of perishable freight service;'' that his business was to ''supervise the icing of cars, the loading and service in transit.''

The foregoing is the substance of the testimony with regard to the authority of Meinhardt to make the contract sued upon in Count 1. The court instructed the jury as follows:

''The extent of the authority of an agent may depend sometimes upon the nature of the agency, and may be extended or varied upon the ground of implied authority, according to the pressure of circumstances connected with the business with which he is intrusted. The emergency of an accident or an unusual condition which requires prompt action may invest the representative of the company highest in authority who is then present, with power to do such things as are reasonable to meet the emergency.''

The question at this point for our determination is whether or not there was sufficient evidence to take the case to the jury, and to support a verdict finding that Meinhardt had authority to bind the appellant by an agreement of the character set out in Count 1 of the petition. There was no sufficient evidence to take to the jury the question of any express authority on the part of Meinhardt to bind the appellant by any contract of this character. Did he have implied authority so to do, or did the emergency that arose vest him with implied authority to bind his principal by a contract of this character?

A ''supervisor or superintendent of refrigeration'' of a railroad, whose duties were to ''supervise the icing of cars, the loading and service in transit,'' does not have, by reason of such power, any general implied authority to bind his principal by a contract of the character of the one sued upon, which was, in effect, nothing more nor less than an agreement to adjust and pay certain damages for injury claimed to have been caused by appellant's negligence.

Meinhardt was not the agent of the railroad company in

charge of the business of accepting and billing freight, nor was he the claim agent of the company, clothed with authority, either express or implied, to adjust claims for damages. Conceding that he had authority to supervise the manner of loading and of refrigeration of the car in question, this did not carry with it any general implied authority to bind his principal by a contract of this kind. As bearing on this question, see *Cleveland, C. C. & St. L. R. Co. v. Shea,* 174 Ind. 303 (91 N. E. 1081); *Illinois C. R. Co. v. Swanson,* 92 Miss. 485 (46 So. 83); *Louisville & A. R. Co. v. Bennett,* (Ky.) 76 S. W. 408 (not officially reported); *Weikle v. Minneapolis, St. P. & S. S. M. R. Co.,* 64 Minn. 296 (66 N. W. 963); *Gathright v. Pacific Exp. Co.,* 105 Tex. 157 (145 S. W. 1185).

Did an emergency arise which vested Meinhardt with implied authority to make the contract in question?

That an agent may have implied authority to bind his principal under certain emergencies is well recognized by the authorities. This usually grows out of the character of the employment and the obvious necessities created by the emergency. In such a situation the agent is sometimes referred to as "an agent of necessity." It is scarcely correct to say that the implied authority to act arises when the emergency occurs. The implied authority to act in the emergency inheres in the original employment of the agent. It is called into use when the emergency arises. We recognized this rule in *Sloan v. Central Iowa R. Co.,* 62 Iowa 728, wherein we said:

"We think, when the regular brakeman is absent, and the proper and safe management of the train so requires, the conductor has authority to supply the place of the absent brakeman, and, for the time being, such person is an employee of the conductor's principal. Of necessity, it seems to us, the conductor must have such authority."

See, also, *Fox v. Chicago, St. P. & K. C. R. Co.,* 86 Iowa 368; *Louisville & N. R. Co. v. Vaughn's Transfer Co.,* (Ky.) 123 S. W. 253 (not officially reported).

The rule is most frequently invoked in cases of accident or physical injury, as where an employee or passenger on a train is injured, and the conductor in charge of the train employs a physician to care for the immediate needs of the injured party.

*Toledo, St. L. & K. C. R. Co. v. Mylott,* 6 Ind. App. 438 (33. N. E. 135) ; *Heinrich v. Pittsburg R. Co.,* 36 Pa. Sup. Ct. 612; *Terre Haute & Ind. R. Co.,* 98 Ind. 358; *Reynolds v. Chicago, B. & Q. R. Co.,* 114 Mo. App. 670 (90 S. W. 100) ; *Williams v. Shackelford,* 16 Ala. 318.

And even in such a case, the physician of a railway company has no implied authority to bind the company to pay for meals furnished nurses and relatives of a party injured by the railroad. *Bushnell v. Chicago & N. W. R. Co.,* 69 Iowa 620.

We discussed the foregoing questions at considerable length, with citation of authorities, in *Carson v. Chicago, M. & St. P. R. Co.,* 181 Iowa 310, wherein we recognized the general rule of implied authority of an agent to act in cases of great emergency when some interest of the master's is to be conserved thereby, and said :

"It is elementary that those dealing with agents are bound to know the extent of the agent's authority. If they do not know, they must ascertain at their peril. On the other hand, the principal is not charged with knowledge of anything the agent may do in excess of his authority, and is not bound thereby, save upon ratification, unless the party dealing with the agent has been misled to his injury by the principal's having clothed the agent with apparent or ostensible authority to do the things he has done in excess of authority."

In the case at bar, the superintendent of refrigeration service, whose duty was to look after the matter of loading cars and their icing and refrigeration, had no implied power, by virtue of his office or the work he did, to bind his principal by a contract in adjustment of a claim for damages against the railroad. His original employment did not vest him with an implied authority to act in an emergency of the character of the one in question, so entirely foreign to the purpose and scope of his agency.

In *Weikle v. Minneapolis, St. P. & S. S. M. R. Co.,* supra, the general manager and general freight agent of the railway company agreed that, if a party to whom hogs were shipped should not pay the price of the hogs, the railroad company would guarantee the payment of the price to the plaintiff. The court said :

"There was no express authority from the corporation that the manager or agent might make such a guaranty, and there could not be any implied power, because giving such guaranty was beyond the apparent scope of their authority."

*Short v. Delaware & H. Co.*, 41 Pa. Sup. Ct. 141, is relied upon by appellees. In that case, strawberries were delayed in transportation, and when they reached their destination, a large part of the fruit was in bad condition. The freight agent of the company agreed that, if the plaintiff would pay the freight and take the berries and sell them at the best price he could, the defendant company would pay any loss sustained by reason of the condition of the berries. Suit was brought on this contract. It appeared that the freight agent had "rather extensive powers;" that he was the head man of the department at that place, and had authority to dispose of goods, when a consignee refused to accept, "to the best advantage." The court held that, in view of his broad powers which the agent testified had been placed upon him by the company, the case was one for the jury.

No such situation is presented in the case at bar. The supervisor of the refrigerator service had no powers "to dispose of goods to the best advantage." No such emergency existed because of the injury to the shipment of strawberries as gave this man implied authority to adjust a claim against the railroad company for damages. As bearing somewhat on the question, see *Elder & McKinney v. Stuart,* 85 Iowa 690.

We are of the opinion that, under the record, it was error for the trial court to submit Count 1 to the jury.

II. Appellant contends that the court erred in submitting to the jury Count 2 of appellees' petition. As we construe Count 2, it pleaded a cause of action against the appellant for negligence in injuring the property of appellees while in possession of the appellant as a common carrier. It is contended that there was no sufficient evidence in the case to submit to the jury the question of damages under this count of the petition. It must be conceded that the evidence in regard to the damages suffered by appellees under this count is quite meager and inconclusive, but we think there was sufficient evidence to carry to the jury this count of the petition. In view of a possible

retrial of the case, we do not deem it proper to make further comment upon the evidence.

Other matters argued by appellant are not likely to occur upon a retrial of the cause, in view of our holding in respect to Count 1.

For the error pointed out, the judgment of the trial court must be, and the same is,—*Reversed.*

Evans, Stevens, and Arthur, JJ., concur.