ARNDT *v.* TURNER, et al.

No. 40315 March 4, 1957 92 So. 2d 875

*Watts & Colmer,* Pascagoula, for appellant.

*O. L. McLeod,* Pascagoula, for appellee.

LEE, J.

George E. Arndt, on October 9, 1952, filed his bill of complaint against Terry M. Turner and wife, Mrs. Rogers A. Turner, and Mrs. Ann Auer. He sought to recover $689.36, allegedly consisting of a commission of $450.00 for producing a purchaser for property owned by the Turners, which they subsequently sold to Mrs. Auer, and also $239.36 which the Turners had authorized him to expend for necessary repairs. There was also a prayer for the imposition of a lien on the property to assure payment of the demand.

Process was issued for the defendants. The sheriff's return showed personal service on Mrs. Auer, but the Turners were not found in the county. On November 29, 1952, Mrs. Auer filed general and special demurrers to the bill. Thereafter on April 1, 1953, the complainant caused process to issue for the Turners in Lake Charles, Louisiana, by publication, returnable to the second Monday of June, 1953. On April 13, 1953, the previously filed demurrers were sustained, and the complainant was granted twenty days in which to amend. On April 28, 1953, Arndt filed his amended bill of complaint against

all of the parties, reiterating the allegations of the original bill. He further charged, in effect, that the Turners, fraudulently and with the purpose and intent to defraud the complainant, executed to Mrs. Auer a deed to the property in question; that Mrs. Auer had full knowledge of the repairs and improvements which he had made; that she fraudulently and purposely joined with the Turners to defraud him of his commission and the funds which he had expended in repairs; and that she had not paid, and the Turners had not received, any consideration for the property, but that she was holding the same for the purpose of resale. He attached thereto a copy of a contract wherein Charles C. Wilson had agreed to purchase the property.

The Turners appeared before the court and litigated this matter as follows: (1) On June 8, 1953, they together with Mrs. Auer, filed general and special demurrers to the amended bill. (2) On September 15, 1953, all defendants filed a motion to strike Charles C. Wilson's petition of intervention. (3) On June 25, 1954, all defendants moved the court to reconsider its action in overruling their general and special demurrers. (4) On the same date, the defendants, by separate motions and then by another motion in which all joined, moved to quash the process against them. (5) Again, on the same date, all defendants, by motion, prayed for an appeal with supersedeas to the Supreme Court. (6) Besides, by the bill of exceptions, it appears that, on June 11, 1954, the attorney for the Turners sent to the attorneys for the complainant a copy of the answer which he had advised that he was going to file. This paper was later exhibited to the court and argument was made theron, although it was never actually filed of record. The demurrers and all of the motions, except the striking of the petition of Charles C. Wilson, were overruled by the court.

 █ The several appearances other than the motion to quash the process, were effective to bring the

parties before the court for all purposes. The motion to quash, even if sustained, would have been effective to do this for the next term of the court. Section 1881, Code of 1942. See also Batson & Hatten Lbr. Co. v. McDowell, 159 Miss. 322, 131 So. 880; Citizens Bank of Hattiesburg v. Grigsby, 170 Miss. 655, 155 So. 684; Turner v. Williams, 162 Miss. 258, 139 So. 606; I. C. R. Co. v. Swanson, 92 Miss. 485, 46 So. 83.

▆▆ ▆ The land in question lay in Jackson County. The alleged contract of sale was made in that county, and the alleged fraud also occurred in that county. The court therefore had jurisdiction of the subject matter; and when the defendants entered their appearances, as stated above, it acquired jurisdiction of the parties.

Notwithstanding the several appearances, as stated, yet on July 6, 1954, the Turners filed a motion, in which it was recited that they were ''appearing specially herein by their solicitor * * * for the purpose of presenting this motion * * *'', namely to dismiss the cause as to them, because the court did not have jurisdiction, and the court sustained the motion and dismissed the cause as to them.

Obviously the court was in error in thus sustaining the motion.

Thereafter the issue between the complainant and Mrs. Auer was tried. The regular chancellor, who had passed on all of the above proceedings, was sick at the time of the trial on the merits and a special chancellor was appointed for that purpose.

▆▆ ▆ Oral and documentary evidence was adduced. Without detailing the evidence of the witnesses or stating the contents of the documents, it is sufficient to say that the court was amply justified in finding that the evidence failed to show a conspiracy between Mrs. Auer and the Turners for the purpose of defrauding him, or that Mrs. Auer had any knowledge of a lien or claim against the property prior to the time when she pur-

chased it, or that she was not a bona fide purchaser for value. Since the court found these facts and dismissed the cause as against Mrs. Auer, it follows that the decree, in that respect, must be affirmed.

The learned special chancellor, in his written opinion, expressed the belief that the Turners were in court for all purposes, but declined to do anything about this feature of the case in view of their dismissal by the regular chancellor, saying simply that "as to the Turners, we will have to just leave the question open".

As heretofore stated, the Turners were properly before the court for all purposes, and as to them, the cause must be reversed and remanded.

Affirmed in part, and in part reversed and remanded.

*Roberds, P. J.,* and *Arrington, Ethridge,* and *Gillespie, JJ.,* concur.