# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

---

FIRST DISTRICT—APRIL TERM, 1878.

---

MURRAY NELSON ET AL.

v.

THE CHICAGO, BURLINGTON & QUINCY R. R. Co.*

1. CONSIGNOR AND CONSIGNEE—CHANGE OF CONSIGNEE.—The rule that while property is in transit a consignor may change the consignee, or otherwise direct a disposition of the property according to his will, does not apply to cases where such property is consigned to one who has advanced money with which to purchase the property consigned, in pursuance of an original agreement to so consign it. In such a case the delivery to the carrier amounts to a delivery to the consignee, and from the time of such delivery the right of the consignee becomes vested.

2. CONSIGNMENT TO FACTOR TO SELL MAY BE CHANGED, WHEN.—Where property is consigned to a factor for the purpose of sale, the consignor may at any time before actual delivery to the factor, change its destination, and direct its delivery to another; but where the factor makes advances or incurs liability on the strength of such consignment, he is entitled to reimburse himself for such advances out of the proceeds of such sale, and the consignor has no right by any subsequent order to suspend or control such sale, except as respects any surplus not necessary for the reimbursement of such advances.

3. RIGHTS OF THIRD PARTIES HAVING NOTICE OF CONSIGNEE'S CLAIM.—In this case the consignment to appellants was changed to a consignment to

---

* The opinion in this case was rendered at the April Term, 1878; but at the time the first volume of Reports went to press was pending on a motion for re-hearing, which has since been denied. The decision in the case following this was also rendered at the April Term, 1878.

(180)

the cashier of a bank at Streator, with the knowledge by the officers of the bank of appellant's claim. This being so, the bank is in no better attitude to dispute the right of appellants than the consignors themselves have.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. WILLIAMS & THOMPSON, Mr. E. A. STORRS, and Mr. GEORGE A. TALLEY, for appellants; as to what is necessary to constitute a public warehouse and the title conferred by warehouse receipts, cited Broadwell v. Howard, 77 Ill. 305; Cool v. Phillips, 66 Ill. 216.

Appellants had a special property in the grain, which the law will protect as sacredly as an absolute title: First Nat. Bank v. Shaw et al. 61 N. Y. 291; Brown et al. v. McGraw, 14 Pet. 495.

After goods have been delivered to a carrier and rights have accrued, change cannot be made so as to defeat the prior title: The Idaho, 3 Otto, 575; Valle v. Cerre, 36 Mo. 586; Halliday v. Hamilton, 11 Wall. 561; Webster v. Granger, 78 Ill. 230; Grove v. Brien, 8 How. 438; Grosvenor v. Phillips, 2 Hill, 147; Stafford v. Webb, 1 Hill & Denio, 213; Clark v. Mauran, 3 Paige, 376; Gibson v. Stevens, 8 How. 397; First Nat. Bank v. Shaw, 61 N. Y. 302.

The carrier must deliver to the true owner, although against the consent of the bailor: Western Trans. Co. v. Barber, 56 N. Y. 552; Am. Ex. Co. v. Greenhalgh, 80 Ill. 68.

A warehouse receipt or bill of lading confers no title unless the party issuing the same has title: Burton v. Curyea, 40 Ill. 320.

Generally, as supporting appellant's view of the case: Stevens v. Railroad Co. 8 Gray, 265; Schumaker v. Eby, 24 Pa. St. 521; Kimberly v. Patchin, 19 N. Y. 331; M. & T. Bank v. F. & M. Nat. Bank, 60 N. Y 40; *In re* Comstock, 3 Sawyer, 320.

Mr. FRANK J. CRAWFORD, for appellee; that under the issues made, it was incumbent upon the plaintiffs to establish every

fact essential to their title, cited Anderson et al. v. Talcott, Gilm. 365.

A consignor of goods has the right to change their destination while in the possession of the carrier, and the carrier is bound to obey his directions: Lewis v. G. & C. U. R. R. Co. 40 Ill. 287; M. S. & N. Ind. R. R. Co. v. Day, 20 Ill. 376; Ackley et al. v. Kellogg et al. 8 Cow. 223; Van Santvoord v. St. John, 6 Hill, 158; Scorthon v. South Staffordshire R'y Co. 18 Eng. L. & Eq. 554; Abbott on Shipping, 528; Angell on Carriers, § 281.

Delivery of a bill of lading is a symbolical delivery of the goods: Peters et al. v. Elliott et al. 78 Ill. 321; M. C. R. R. Co. v. Phillips et al. 60 Ill. 190; Bank of Rochester v. Jones, 4 N. Y. 497; Haille v. Smith, 1 Bos. & Pul. 563; Dows et al. v. Green, 24 N. Y. 638; Rawles et al. v. Deshler, 42 N. Y. 572; First Nat. Bank v. Kelly, 57 N. Y. 34; Nat. Bank of Green Bay v. Dearborn, 115 Mass. 219; Nat. Bank of Cairo v. Crocker, 111 Mass. 163.

The bank is not chargeable with notice of appellant's claims to the grain: Moore et al. v. Hunter et al. 1 Gilm. 317.

Where one of two innocent parties must suffer, he who has contributed thereto must bear the loss: Gavagan v. Bryant et al. 83 Ill. 376; Garvin v. Wiswell, 83 Ill. 215.

The indebtedness to appellants was merely a general balance, for which they acquired no lien upon the property, and the change in the consignment was authorized by law: Strahorn et al. v. Union Stock Yards Co. 43 Ill. 424.

If the interest of appellants in the grain was by way of a lien for indebtedness, it would be invalid under the chattel mortgage laws, as to the bank or other third parties: Frank v. Miner, 50 Ill. 444; Lemen et al. v. Robinson, 59 Ill. 115.

Murphy, P. J. This was an action of replevin in the Superior Court of Cook county, brought by appellants against appellee to recover four car loads of grain, then in the possession of the appellees at Chicago, the same having been shipped from Streator, Illinois.

It appears that appellants are commission merchants in

Chicago, doing a general buying, shipping and commission business at that point, and that Richardson & Son were country operators in the same line, at Streator, LaSalle county, Illinois, who owned and operated a warehouse at that point for the storage of grain; that in 1874, Richardson & Son made an arrangement with appellants by which appellants were to furnish money to Richardson & Son, with which to purchase grain of different kinds at Streator, which was to be shipped to appellants, to be sold by them thus to reimburse themselves the amount advanced.    In pursuance of such arrangement, Richardson & Son purchased large quantities of grain, and shipped the same to appellants at Chicago for sale, frequently drawing drafts upon appellants with bills of lading attached, which were paid.    It also appears that at certain times the condition of the market at Chicago was such that it was conceived to be the interest of all parties to retain, for a time, grain so purchased in the warehouse of said Richardsons at Streator, and that at such times drafts were drawn upon appellants by said Richardsons, accompanied by warehouse receipts, issued by themselves upon grain so purchased and stored in their warehouse as security for such advances.    This course of deal continued down to about the 20th or 21st day of October, 1875, at which time Richardson & Son appear to have been indebted to appellants in a large sum of money, viz., about eight thousand dollars; that at that time appellants were in possession of a large number of warehouse receipts, representing grain in the warehouse of said Richardsons at Streator; that they had requested said Richardsons to forward said grain; that Richardsons had promised to do so, and still failed to ship the same, as they, at different times, had agreed to do; that appellants became dissatisfied with the delay, considering it unusual in the ordinary course of business.    That on or about the 20th of October, 1875, appellants sent their agent, one Philander Pickering, to Streator, with these warehouse receipts, to have the grain, called for by them, shipped at once to appellants.    It appears that Pickering, upon reaching Streator, called upon Richardsons, presented said warehouse receipts, figured up the amount they called for, which, he says, he thinks would have

taken all the grain then in the warehouse That by the apparent acquiescence and approval of the Richardsons, he delivered up the warehouse receipts, and proceeded to cause said grain to be shipped to Chicago. Such cars were loaded on the track of the appellee as could be then obtained, it not being practicable to obtain at that time cars enough to transport all of said grain. It appears that Pickering remained there, telegraphed to Chicago for more cars; four more cars were received and loaded from said warehouse, and consigned to Murray Nelson and Company, Chicago, no bill of lading being delivered to Pickering. It appears that Pickering, the agent of appellants, having got these four cars loaded on the track, consigned to appellants, turned his attention to other business, perhaps leaving Streator. It appears that on Saturday, the 23d, the First National Bank at Streator caused to be entered up judgments upon judgment notes held by it against the Richardsons, in the Circuit Court of LaSalle county, at Ottawa, and executions to issue thereon. That on Monday morning, William S. Jackson, vice president of the bank, went to Ottawa and caused the sheriff of LaSalle county to go to Streator, for the purpose of levying said execution upon the said warehouse and its contents. It appears that on that morning the Richardsons drew a draft on appellants for $500, on account of the four cars of grain so shipped, being the same four in controversy in this suit. That they attached to said draft a bill of lading issued by appellee, of said cars by which they were consigned to appellants; that they presented that draft to the bank and had the same discounted. It appears that on the train from Ottawa to Streator, the sheriff, Jackson and one of the Richardsons were together; that during the ride between Ottawa and Streator, Richardson informed Jackson that they had that morning drawn such draft and had the same discounted at the bank, attaching thereto the bill of lading issued as above stated; that upon reaching Streator, Jackson and the sheriff left the train hastily, and went to the freight office of the appellee, and with the assent and approval of the Richardsons, caused the bill of lading to be changed by taking up the one first issued, consigning the said grain to Murray Nelson & Company, and obtained another,

Nelson et al. v. C. B. & Q. R. R. Co.

consigning the same to James G. Wilson, cashier of the bank, and thereupon the sheriff levied his execution upon said warehouse and its contents, including all the unshipped grain then left, by virtue of his execution in favor of said bank and against said Richardsons.    It appears that upon the cars arriving at Chicago, appellants demanded the grain, and upon refusal of appellee to deliver the same, appellants replevied it, and upon a trial of that cause in the court below, a jury was waived, and the case was submitted to the court for trial, and upon hearing, judgment was rendered against appellants, from which they appeal to this court.

The question presented for our determination upon these facts is, to whom, as matter of law, the grain in these four cars rightfully belonged upon the arrival in this city, shipped under the circumstances as above stated.  Its proper determination is of importance far beyond the amount involved in this case.

The habits of the people, and course of business of this, as well as of other great commercial centres, make it of the utmost importance to safe and successful commercial transactions, that the rights of consignor and consignee should be definitely and clearly understood.    These rights, like all others, recognized by law, must rest upon the principles of justice and fairness.    As it will be seen in this case, appellants, by arrangement with said Richardsons, had from the year 1874 been constantly advancing money upon the faith and credit that said Richardsons would keep and perform their obligations with them by shipping to them such grain as their money was used to purchase, thus enabling them to reimburse themselves and make the transaction as safe as it was hoped to be profitable to them; that the grain in the warehouse at Streator was paid for by the money of appellants, and although, whilst in said warehouse, and in the possession of said Richardsons, it was under their control, when at the instance of appellants' agent the grain was shipped to them, they being equitable owners thereof, and was delivered to the common carrier on its track, consigned to said equitable owner, it is difficult to see on what principle of reason or justice a law could rest which would permit the consignor

after that time, to again assume possession thereof, and appro-
propriate it to his own use.

It is urged by appellee that a consignor may, at any time
whilst goods are in transit, change the consignee or otherwise
direct a disposition of the property, according to his own will.
.Numerous authorities have been referred to in support of this
doctrine.   With those authorities we fully concur.   When the
consignment is to a factor without interest in the property, the
rule undoubtedly is, that in the commercial transactions of the
country a consignor may control, at any time, the destination
of his property or goods, and that it is reasonable and right that
he should do ·so; ·but when goods are consigned as in this case,.
to a consignee who has advanced money with which said goods
have been purchased, and in pursuance of an original agree-
ment to so consign them, the question becomes a very different
one, and in its very nature cannot be controlled or governed by
rules that would be entirely applicable and proper between
parties who are differently situated.

If appellants had made no advances to the Richardsons and
were simple factors at Chicago for the sale of said grain,
then it is clearly the law that as consignors they might at any
time before actual delivery to the factor, change the destina-
tion of said grain and direct its delivery to whomsoever they
might choose.   But in this case the warehouse receipts, calling
for this grain, were in possession of the appellants, and . upon
an accounting between them and the Richardsons, it was agreed
that the grain should all be delivered upon these receipts, and
the receipts delivered up to the Richardsons in pursuance of
such figuring and a part of the grain shipped out, and the
balance being shipped out as rapidly as cars could be obtained
for such purpose, and after these cars were loaded upon the
track, Richardsons, at the instance of the vice-president of the
bank, and in the presence of the sheriff who held executions
against the Richardsons, caused the original bill of lading
issued consigning said grain to appellants to be taken up and
destroyed and a new one to issue, by which the grain was con-
signed to one of the officers of the bank, a creditor of Richard-
son & Son, thus usurping a possession once fairly surrendered,

Nelson et al. v. C. B. & Q. R. R. Co.

thus attempting to appropriate to their own use the value of this grain, notwithstanding it was well known to the Richardsons at the time that Murray Nelson and Company had advanced the money which had paid for the same.

The bank, by its vice-president being present and participating in this very act, is in no better attitude to dispute the right of appellants than are the Richardsons.   Indeed, the facts seem to bear upon their face the suggestion of collusion between the bank officers and the Richardsons, by which $500.00 of the money of appellants should go to pay $500.00 of the indebtedness of Richardson & Son to the bank.   This we think the law will not sustain or justify.   We think that when a consignment is once made to a consignee who has advanced money, as in this case, a delivery to a common carrier amounts to a delivery to the consignee, and that from the time of such delivery, the right of the consignee becomes vested, and it is no longer the province of a consignor, as in an ordinary case of consignment, to change, or by any act of his, affect the destination of the property consigned.   In the case of William and James Brown and Company against Thomas Mc-Graw, 14 Peters, 479, the court, in discussing this question, says:   "On the other hand where the consignment is made generally, without any specific orders as to the time or mode of sale, and the factor makes advances or increases liability on the footing of such consignment, the legal presumption is that the factor is intended to be clothed with the ordinary rights of factors, to sell, in the exercise of sound discretion, at such time and in such manner as the usage of trade and his general duty require, and to re-imburse himself for his liabilities out of the proceeds of the sale, and the consignor has no right by any subsequent orders, given after advances have been made or liabilities incurred by the factor, to suspend or control this right of sale, except so far as respects the surplus of the consignment, not necessary for the re-imbursement of such advances or liabilities.   Of course this right of the factor to sell or re-imburse himself for his advances and liabilities applies with stronger force to cases where the consignor is insolvent, and where, therefore, the consignment constitutes

the only fund for indemnity." In this case, Richardson & Sons, consignors, were in failing circumstances; the officers were then seizing their property.

A shipment of goods by the owner, under an agreement by which the consignee has advanced money thereon, gives the consignee a title to the goods, and when delivered to a common carrier in pursuance of such arrangement, the title of a consignee, thus acquired, cannot be divested or impaired by any act of the consignor. John H. Stevens and another v. Boston & Worcester Railroad Company, 8 Gray, 265; Schumacher v Eby, 24 Pennsylvania State Reports, 521; Halliday v. Hammilton, 11 Wallace, 560.

In the case of Jacob Cool et al. v. Phillips & Carmichael, 66 Ill. 217, our own Supreme Court say: " Where a person engaged in the grain business for himself and others, purchased and held a lot of corn for parties who advanced him the money for that purpose, it was held that the corn was the property of the parties advancing the money; and that the agent had no interest in it subject to execution." Broadwell v. Howard, et al. 77 Ill. 305.

As we have shown, appellants made advances to the Richardsons, in pursuance of an arrangement to that effect between them, to a large amount of money in excess of any and all grain they had received. We think that when the grain in question was loaded upon the track of appellee at Streator, consigned to appellants, in pursuance of the original agreement upon which the advances had been made, the right of appellants to have the grain come forward and be received by them, became fixed as between the Richardsons and appellants ; that the bank can claim no higher rights 'or equities than those enjoyed by Richardsons; for if they were not in possession of a full knowledge of all the circumstances and facts involved in the deal between Richardsons and appellants, they were certainly in possession of such knowledge as would have put them upon inquiry; and as prudent and reasonable business men, they were bound to inquire and find out; so in the light of these views, and the authorities above referred to, we think it clear that Murray Nelson and Co. were entitled to the grain involved,

and that the finding of the court below should have been for the plaintiffs. The learned judge who presided at the trial below, took a different view of the case, and found the issues joined for the defendant, which we think was error, for which error the judgment of the court below is reversed, and the cause remanded.                      Judgment reversed.