GRIDLEY, MAXON & CO. *v.* TURNER.

(Division B. Nov. 15, 1937.)

[176 So. 733. No. 32862.]

(Division B.   Nov. 29, 1937.)

[177 So. 362.   No. 32862.]

R. H. & J. H. Thompson, of Jackson, for appellant.

**Ford & Ford,** of Pascagoula, for appellee.

Argued orally by **J. H. Thompson**, for appellant, and by **E. J. Ford**, for appellee.

, **Ethridge, P. J.,** delivered the opinion of the court.

This suit was filed in the circuit court of Jackson county, Miss., on October 23, 1934, against the appellant, and summons thereon was served upon George Kerr, an agent of appellant. Copy of the summons was mailed to the appellant at its office in Chicago, Ill., on October 24, 1934, by the clerk of the court. Thereafter, on December 7, 1934, appellant filed a motion in the circuit court to quash the process on the alleged ground that George Kerr was not its representative in any capacity that would authorize service of process to be served upon him for appellant. In the motion, it was further alleged that appellant had never done any local business in the state of Mississippi, but only interstate commerce, and that George Kerr was only a soliciting agent for the purchase of pecans which would be shipped directly to the appellant at Chicago on a commission basis. Evidence was offered on this motion to quash to substantiate the appellant's contention that it had never conducted a local business in this state, and had no agent on whom service of process might be had, and that the only power George Kerr had was to solicit orders of pecans for appellant to be shipped to it in Chicago, this not constituting intrastate commerce.

Appellee introduced evidence on this motion to quash to show that Kerr purchased pecans outright for appellant, paid for them in Mississippi, hauled them from the premises to the railroad, and had them loaded and shipped to Chicago, and that, in certain cases, Kerr paid for the pecans and they were delivered to him. ·

Kerr and one of the officers of appellant in Chicago testified that Kerr had no authority to buy pecans or sell them, but that he had, in some cases, done so and had paid advancements thereon out of his own personal funds, for which he would be reimbursed by appellant out of the sales, receiving certain profits.

The court overruled the motion to quash, and appel-

lant asked leave to plead, which was granted, and, pleas having been filed, the case was tried on its merits, resulting in a judgment for the plaintiff, appellee here.

The first question presented for decision is whether the motion to quash effectually brought appellant into court so as to obtain jurisdiction of the person. Section 2999, Code of 1930, reads as follows: "Where the summons or citation, or the service thereof, is quashed on motion of the defendant, the case may be continued for the term, but defendant shall be deemed to have entered his appearance to the succeeding term of the court." This section has been construed by this court in a number of cases, holding that, by filing a motion to quash a process, the defendant entered his appearance. See Batson & Hatten Lumber Co. v. McDowell, 159 Miss. 322, 131 So. 880; McCoy v. Watson, 154 Miss. 307, 122 So. 368; Standard Oil Co. v. State ex rel., 107 Miss. 377, 65 So. 468; Fisher v. Pacific Mutual Life Ins. Co., 112 Miss. 30, 72 So. 846. In Batson & Hatten Lumber Co. v. McDowell, supra, the court, in discussing the effect of this statute, said that, by filing a motion to quash, the court gets jurisdiction of the defendant as effectually as if he had been legally served with process, and that by such a motion the defendant is not prejudiced as to his other rights, he is simply in court to the same extent and with all the rights that he would have, as the result of being legally served with process. Many authorities are there cited.

In McCoy v. Watson, supra, it was held that, by statute and general practice in this state, there is no such thing as a special appearance in our courts, and that it is our long-settled practice that, when a party comes in, he must come in entirely or else he must stay away. In the course of the opinion it is said that, instead of making the exception, it would be sounder to say that the rule will be kept intact, and that, when a party has appeared for one purpose, he will be kept for all purposes.

It is the contention of appellant that the case of Saxony Mills v. Wagner, 94 Miss. 233, 47 So. 899, 23 L. R. A. (N. S.) 834, 136 Am. St. Rep. 575, 19 Ann. Cas. 199, holds that it is insufficient to serve process upon a mere soliciting agent. That case was decided in 1908, under chapter 61, Laws of 1894. There was no appearance in the justice of the peace court which rendered the judgment. That section was amended by section 920, Code of 1906, now appearing as section 4167, Code of 1930, under which, when a corporation does a local business in the state without filing its charter as required and having an agent upon whom process may be served, process may be served upon any person found who represented the corporation at the time the transaction took place, no matter what character of agent such person may be. The purpose of this section is to give an effectual process so as to bring a defendant into court where a judgment may be rendered. This section has no relation to a motion to quash a process. If a defendant does not comply with section 4167, Code of 1930, and the process is not valid or effectual, and such defendant does not appear in answer to the suit, the question of jurisdiction of the person may be raised in any appropriate proceeding, but, if a defendant files a motion to quash a process, although such process may be insufficient within itself to bring a defendant into court, the defendant is brought into court by appearing for the purpose of quashing the process, and thereby the court is given jurisdiction of the person, notwithstanding any defect in the process.

The defendant in the case at bar did not choose to avail itself of the right to have the cause continued until the next term, but applied for leave to file pleas, consequently the case proceeded to trial. The appellant filed two pleas, one that it was not indebted to appellee for any greater amount than that paid into court for the benefit of appellee, and the other, the plea of tender, sets forth that on May 1, 1937, appellant paid into

court as an absolute tender to appellee the sum of $136.49, being $113.50, with interest thereon from December 18, 1933, to the date of payment, in full settlement of the amount owing by appellant to appellee, and on May 3, 1937, appellant paid to the clerk of the court all costs accrued up to the date of payment, for the benefit and as a tender unto the appellee.

The action of plaintiff is founded upon a stipulation to send appellant a carload of pecans, aggregating 19,560 pounds, under a written contract as follows:

"Pascagoula, Mississippi
"November 22, 1933.

"Mr. C. L. Turner,

"Moss Point, Mississippi.

"Dear Sir:

"This is to acknowledge the arrangement under which we will handle the pecan nuts shipped by you to our firm at Chicago by freight this day, said shipment embraces (CB&Q 132765)

283 sacks, a total of 19,560 Pounds, divided          $1564.80
    9632 lbs. of Success
    7549 lbs. of Stuart
    666 lbs. of Van Deman
    880 lbs. of Wright
    586 lbs. of Lewis
    247 lbs. of Schley

"We are to sell these pecans at the best market obtainable and remit for same when sold less our usual commission of 10 per cent, deducting, of course, the freight charges, drayage, if any, which we will pay on arrival of goods in Chicago. We hereby advance eight cents per pound for the entire lot, which will also be deducted from our remittance to you after the sale of the nuts. Assuring you of good and prompt attention, we beg to remain, Very truly yours.

"Gridley, Maxon & Company
"By George Kerr."

On December 9, 1933, C. L. Turner wrote the appellant

at Chicago as follows: "About three weeks ago through your Mr. Kerr, I shipped you nearly ten tons of pecans on which you advanced me eight cents per pound. The understanding with Mr. Kerr was that these pecans would be held for a good market. Please do not sell these pecans on this low market as I think the price will advance soon. I instructed Mr. Kerr to hold my pecans for a better market and should you be bothered about your advance to me, I would rather remit you in payment of this advance than to have my pecans sold on this low market. Kindly advise me promptly as to the receipt of this shipment and that you will follow these instructions. Awaiting your reply, I beg to remain, Yours very truly, C. L. Turner."

On December 12, 1933, appellant wrote appellee saying, among other things, that: "We have yours of the 9th, and assure you that we will endeavor to realize all we possibly can for your pecans. The majority of them are selling around twelve cents per lb., an occasional sack higher and an occasional sack lower, depending upon quality."

On December 16, 1933, C. L. Turner telegraphed appellant, saying: "Letter twelfth received regret pecans sold price mentioned hope not many. Write me fully amount pecans on hand what storage will cost and hold all shipment left for further instructions," and appellant, on the same date, telegraphed Turner as follows: "Pecans all sold but party in Milwaukee who bought some Success at twelve cents pound complaining about quality says his customers might return them account too many dry and empty so will have to wait for returns as balance Success sold nine cents pound Stuarts mainly twelve cents."

On December 23, 1933, C. L. Turner wrote appellant, requesting, among other things, a definite statement of his account, and in reply thereto appellant sent Turner a statement of sales of said pecans as follows:

|  | C B & Q | 132765 |  |  |
|---|---|---|---|---|
|  |  | Weight or doz. | Price |  |
|  | 1 | 51 | 18 | 9.18 |
| 283 Sax Pecans | 6 | 430 | 14½ | 62.35 |
|  | 39 | 2536 | 13 | 329.68 |
|  | 1 | 57 | 12½ | 7.12 |
|  | 124 | 7728 | 12 | 927.36 |
|  | 8 | 654 | 11 | 71.94 |
|  | 59 | 4194 | 10 | 419.40 |
|  | 45 | 3218 | 9 | 289.62 |
|  |  | 18868 |  | $2116.65 |
|  |  | Less credits |  | 11.49 |

Less advance
$1564.80

| | | |
|---|---|---|
| Express | $181.49 | |
| Freight | | |
| Cartage | 28.30 | |
| Ex. Cartage | 7.00 | |
| Ret'ng Pkgs | | |

Acc't Sale for goods
rec'd 11-27-1933

|  | 216.79 | 2105.16 |
|---|---|---|
| Commission | 210.52 | 427.31 |

By Gridley, Maxon & Co.,
        Inc.
27-29 South Water Market

|  |  | 1677.85 |
|---|---|---|
| Less apc |  | 1564.80 |

Dated Chicago, Ill.

Check above

attached        $ 113.05

        12-18-33
E & O E
Number 3905—G

Appellee introduced evidence of pecan buyers at Gulfport, Miss., who transacted business during 1933 and 1934, showing that they sold pecans of like quality to different markets in the United States at prices considerably in excess of the price paid by appellant to appellee in the case at bar. Appellee also introduced testimony to the effect that Kerr, at the time of buying the pecans, said they would bring at least 16 cents per pound, and that appellee's intestate directed him to hold

for a better market. This evidence was objected to, and appellant took the position that the writing signed by Kerr for appellant, above referred to, constituted a contract, and that appellant had a right to sell on the best market in Chicago, and that conversations between Kerr and Turner were incompetent because not embraced in writing. The stipulation in the letter of appellant to Turner dated November 22, 1933, that, "We are to sell these pecans at the best market obtainable, and remit for same when sold," etc., does not provide for sales to be made at any one market, but appellant was to obtain the best obtainable price at any available market and was not limited to Chicago. Under the terms of this contract, the action of appellant, as shown by its telegram stating that the pecans were all sold, after receipt of Turner's telegram requesting that all shipments be held, when they had not in fact been all sold, indicated fraud or a purpose to deal unfairly with Turner in regard to his shipment, and he was authorized to show what price could, in all probability, have been obtained by proper and efficient efforts to deal for the advantage of Turner as well as itself.

The evidence referred to above was competent to show unfair handling and sales, and that the price obtained was not the fair market price of the pecans.

The rule pertaining to the rights of appellant and appellee in regard to sales and instructions to hold, as announced in this state, will be found in Cotton v. Hiller, 52 Miss. 7, as follows: "A general consignment to a factor imports an authority to sell according to the usages of the trade, at his discretion as to the time. But the consignor may, at the time of the shipment, or afterwards, if before sale, impose terms as to time and price, to which the factor must conform. But if the factor, in consideration of such consignment, made advances or incurred liabilities for the owner, he has no right, by subsequent instructions, to control the factor. If the advances and liabilities have been incurred

on account of the consignment and before an assent to the directions of the owner in respect of the time of sale or price, the factor has thereby acquired a special property, and may sell so much as will reimburse or discharge the liability. The owner of the property has undoubtedly the right to impose terms on his commission merchant as to the time of sale or the price, or both. The restriction upon that general right is that, after he has obtained money, credit, or goods, from his agent, on the property, he cannot require the agent to hold until he orders a sale unless the owner shall repay the advances or take up the liability, for these were made or incurred on the faith of the right implied in such general consignments of getting the money or meeting the liabilities by a discretionary sale.''

We think, in view of all the facts in the record, that the jury was warranted in finding for the plaintiff, appellee here. We find no reversible error, and the judgment of the court below will therefore be affirmed.

Affirmed.

**Ethridge, P. J.,** delivered the opinion of the court on suggestion of error.

This case was decided at a former sitting of this court, and the suggestion of error filed has been considered by another judge than the one who wrote the opinion, and it has been brought into conference and discussed, and we deem it proper to reply thereto.

In this case there was sufficient evidence for the jury to find, and the jury did find, that appellant did an intrastate business in Jackson county, Miss., where the suit was brought and the case tried. The principal question presented for consideration was whether the process served upon the agent of the appellant was a proper service, and whether the appellant was engaged in intrastate or interstate commerce.

The appellant having done an intrastate business in this state without complying with the requirements by designating an agent upon whom process may be served

and filing same with the Secretary of State, and having filed a motion to quash the process so served, such motion constituted its appearance under section 2999, Code 1930. This has been held by repeated decisions to constitute an appearance for all purposes, the action being transitory and not local. Illinois Central R. R. Co. v. Swanson, 92 Miss. 485, 46 So. 83; Standard Oil Co. v. State, 107 Miss. 377, 65 So. 468; Fisher v. Pac. Mut. Life Ins. Co., 112 Miss. 30, 72 So. 846; McCoy v. Watson, 154 Miss. 307, 122 So. 368; Batson & Hatten Lumber Co. v. McDowell, 159 Miss. 322, 131 So. 880; Turner v. Williams, 162 Miss. 258, 139 So. 606. In McDonough v. Stringer, 155 Miss. 179, 124 So. 334, it was held that under section 2724, Code 1906, section 2378, Hemingway's 1927 Code, the jurisdiction of justices of the peace of transitory causes of action against nonresidents is as full and complete as that of circuit courts under Laws 1926, c. 155, amending Code of 1906, section 707, as amended (Hemingway's Code 1927, section 500,) over like actions, except as to amount involved; that justices of the peace had jurisdiction of personal actions by nonresident plaintiffs against nonresident defendants found and personally served with summons but neither a householder nor a freeholder in district in which they were sued.

The cause of action here sued on is transitory as distinguished from local, and follows the person; consequently the case is controlled by the above-cited authorities, and the case of Arnett v. Smith, 165 Miss. 53, 145 So. 638, and the case of First National Bank of St. Louis v. Mississippi Cottonseed Products Co., 171 Miss. 282, 157 So. 349, do not apply.

Whether there is any conflict in the rules announced in the various decisions referred to is not now necessary to consider. The case at bar is controlled by the cases construed under section 2999, Code of 1930, and the suggestion of error, must, therefore, be overruled.

Overruled.