46 So.2d 236

## LORD v. WERNETH.

I Div. 591.

Court of Appeals of Alabama.
March 21, 1950.

Rehearing Denied May 9, 1950.

Vincent F. Kilborn, of Mobile, for appellee.

HARWOOD, Judge.

Plaintiff below, appellee here, filed suit against the defendant below, appellant here, his complaint as originally filed containing one common count, for money had and received.

The defendant pleaded the general issue; that he had not received any money from the plaintiff or to his use; and that he had no money belonging to plaintiff in his possession or control.

Trial was apparently entered on the above issues.

The plaintiff testified that on 28 April 1947 he had bought a Dodge truck from the Kittrell-Milling Company paying $900.00 down thereon, and had .executed 12 notes for the balance of the purchase price, said balance being approximately $1500.00. The notes were each in the amount of $131.41, due and payable on the 28th of each month. The plaintiff, after acquiring the truck, had a "top" installed thereon at a cost of $278.-20.

Plaintiff alleged that on 15 August 1947 he took his truck to defendant's car lot, the defendant being a used car dealer, and entered into a contract with defendant whereby the defendant was to sell the truck for an amount to net the plaintiff $1000.00, the prospective purchaser to assume payment of the notes for the balance due on the

Chas. Hoffman, of Mobile, for appellant.

purchase price. The defendant advanced the plaintiff $300.00.

The defendant gave to the plaintiff on this occasion the following written instrument:

"Motor # T-12085367                    No. ——
                                    8-15        1947
Received of G. K. Werneth
1—1947 Dodge 2 Ton Truck & Stake Body    Dollars
To be sold for his account, netting him $1000.00
& someone to take over his contract. Advance on
$1000.00 is $300.00
$  To be deducted from $1000.00        J. W. Lord"

The plaintiff further testified that at this same meeting he gave to the defendant a bill of sale, dated 15 August 1947, as the defendant "wanted this to show to whomever bought the truck," for "he had to have it to give him the right to sell my '(plaintiff's)' equity in the truck."

The truck was left in defendant's possession. According to plaintiff the defendant never told him he was going to sell the truck in order to get his, defendant's, money out of it until about a month before the truck was sold, and on that occasion "When Mr. Lord called me, it was about a month before he sold it, and he offered it back to me for about $1690.00 or $1700.00, and I told him I did not have that kind of money, and that was not our deal. I told him that if he sold it for $5,000.00, I was just looking for $700.00. I said, 'I am expecting you to sell it at your price, but all I look for is $700.00 from you.' "

The defendant thereafter sold the truck to one of his former salesmen.

The defendant testified that he undertook to sell the truck as defendant's agent or broker, and thought at the time it was just a question of a few days before he could dispose of the truck for an amount sufficient to net the plaintiff $1000.00, plus a brokerage fee for himself. He did not guarantee to net the defendant $1000.00.

He made extensive efforts to sell the truck by advertisements, demonstrations, telephone calls, etc., but was unsuccessful.

The defendant claimed that on 25 August 1947 he saw the plaintiff and "I stated to him that the first note was due on the 28th, and if I was going to take these notes up, I wanted protection, and wanted a bill of sale, but that I would still try to get him all of his money. I kept the truck eight months and tried to do so, and then I offered it back to him," and that following this "on three different occasions Mr. Werneth would come by there and I would tell him that I wanted my money, and finally I said that the first man who came along that would buy it would get it, to get my money out of it. I told him I wouldn't charge him a nickel of interest. ·Mr. Werneth said, 'That is the only thing you can do as I cannot take it up.' "

Finally after defendant had paid some of the purchase money notes he sold the truck to a Mr. Babtiste on 22 April 1948, who assumed the payment of the remaining purchase money notes, and paid defendant $1170.60 in cash, which amount was the sum defendant had in the truck at this time. Mr. Babtiste was a former salesman for the defendant, but had quit working for defendant on 1 April 1948 to go into the produce business. Mr. Babtiste did not however go into the produce business after buying the truck, but went to work for some company selling trucks.

Mr. F. H. Arnold, one of the witnesses to the bill of sale, testified for the defendant that at the time he signed this instrument as a witness all of the blanks thereon had been filled in, including the date, and that it was signed by the plaintiff in his presence on 25 August 1947, as shown by the instrument.

The record shows that at the conclusion of the plaintiff's evidence his counsel stated that he wished to amend the complaint, and then rest.

The amendment consists of one count, as follows: "Count Two. Plaintiff claims of the Defendant the sum of Seven Hundred and No/100ths ($700.00) Dollars as a balance due under a contract entered into between the Plaintiff and the Defendant on, to-wit: August 15, 1947 by the terms of which the Defendant did agree to sell for the account of the Plaintiff one 1947 Dodge 2-ton truck and stake body at and for a price of $1000.00 net to the Plaintiff

with the purchaser of such truck from the defendant to take over a conditional sales contract under which said truck had been sold to the Plaintiff by Kittrell-Milling Motor Company of Mobile, Alabama upon which there remained a balance due of $1476.92, payable to Kittrell Milling Motor Company in twelve consecutive installments of $131.41 each, the first of which was to become due and payable on August 28, 1947. Plaintiff avers that at the time he and the defendant entered into the aforesaid contract the Defendant did advance to the Plaintiff on account of said net amount of $1000.00 to be received by the Plaintiff on sale of such truck under said contract the sum of $300.00 and that thereafter the Defendant did sell said truck and has failed and refused to pay the plaintiff the balance of $700.00 due the plaintiff on such contract between the plaintiff and the defendant. Wherefore this suit."

The defendant then demurred to count 2, assigning some 26 grounds in support of his demurrer.

Upon the demurrer being overruled the defendant then filed 5 pleas to count 2.

Plea 1 is the general issue.

Plea 2 is as follows: "2. Defendant avers that on, to-wit, the 15th day of August, 1947 he agreed to undertake to sell said Dodge Truck as the agent of or broker for the Plaintiff and for the account of the Plaintiff, and the Plaintiff stipulated that the minimum price which was acceptable to him was $1,000.00 and the payment by the Buyer of said truck of the installments due under the Plaintiff's conditional sales contract to Kittrell-Milling Motor Company of $131.41 per month for twelve months, beginning on August 28, 1947, and that on August 15, 1947, the Defendant advanced the sum of $300.00 to the Plaintiff against the eventual sale price. Defendant avers that he was unable to affect a sale of said truck for the account of the Plaintiff, and that on, to-wit, August 25, 1947, the Plaintiff executed a bill of sale of said truck conveying title thereof to the Defendant, in consideration of the agreement of the Defendant to pay said installment due to Kittrell-Milling on August 28, 1947 and the

remaining eleven installments. And Defendant avers that he paid said installment due on August 28, 1947, and that he either paid or caused to be paid said installments due thereafter as and when the same were due and payable."

Plea 3 adopts the first sentence of Plea 2, and further avers that the defendant tried for many months to sell said truck, and did sell same for a sum equal to the $300.00 advanced the plaintiff plus the amount of all the installments due on the original purchase price, and that plaintiff was advised in advance by the defendant of the sale at said price, and the defendant made no objection.

Plea 4 asserts that the defendant sold the truck as agent for the plaintiff for the sum indicated in Plea 3, without objection on plaintiff's part, and that there is no balance owing the plaintiff.

Plea 5 avers that the defendant sold the truck for the account of the plaintiff, and with his knowledge and without objection, for the sum above mentioned in Plea 3, and that no balance due plaintiff came into defendant's hands from such sale.

The plaintiff demurred separately and severally to the above pleas. The court overruled the demurrers as to Pleas 1 and 2, and sustained the demurrers as to Pleas 3, 4, and 5.

After submission of the evidence the lower court entered judgment in favor of the plaintiff in the amount of $700.00. The defendant duly filed a motion for a new trial, but before the lower court had ruled thereon he perfected his appeal to this court.

The appellant has made five assignments of error.

■ Assignment 1 is that the court erred in overruling appellant's demurrer to the amended complaint.

Appellee's counsel contends that this assignment is too general to warrant a review. The amended complaint contained only one count. This contention is without merit. Allison-Russell-Withington Co. v. Sommers, 219 Ala. 33, 121 So. 42.

In support of this assignment appellant's counsel argues several grounds assigned in support of this demurrer to count 2.

■ He asserts that several of the grounds point out the failure of the count to state whether the alleged contract was written or oral; that it fails to state that the truck was delivered by the defendant after his sale thereof; that it fails to state whether the sale by the defendant was for cash or for credit.

■ The count was faulty in its omission to state whether the alleged contract was written or oral. Byars v. James, 208 Ala. 390, 94 So. 536. We pretermit consideration of the other grounds, for it is obvious from a reading of the record that all of the omitted allegations asserted in the grounds of the demurrer were brought in issue under the issues and evidence of the trial, and actually had been developed prior to the filing of the amendment to the complaint. Under such circumstances a judgment will not be reversed despite the impropriety of the trial court's action in overruling the demurrer. Glenn v. Blackman, 33 Ala.App. 571, 35 So.2d 698; John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 236 Ala. 546, 184 So. 273; Southern R. Co. v. Dickson, 211 Ala. 481, 100 So. 665.

Assignments 2, 3, and 4, respectively, pertain to the action of the court in sustaining appellant's demurrers to appellee's pleas 3, 4, and 5 to count 2.

Again it is apparent that appellant had full evidentiary benefit in the trial below of all matters raised by these pleas to which the demurrers were sustained. Without intimating that error infested the court's rulings in these premises, it is our conclusion that in any event the ruling did not result in error probably injurious to the substantial rights of the appellant.

Assignment 6 asserts that the court erred in overruling appellant's motion for a new trial.

■ This appeal was taken by supersedeas appeal bond while the motion for a new trial was pending and before the motion was acted upon. Such appeal had the effect of removing the cause from the jurisdiction of the trial court, which had no power thereafter to act upon the motion. This rule has been modified as to criminal cases, but still obtains in civil cases. McMahon v. Dozier, 237 Ala. 574, 187 So. 710.

Assignment 5 avers that the court below erred in entering judgment for the appellee and against the appellant.

The evidence shows without dispute that at the time the agreement was entered into between the plaintiff and defendant the defendant advanced to the plaintiff the sum of $300.00, on the $1000.00 net to be paid the plaintiff upon sale of the truck. The evidence further shows without dispute that the defendant made diligent efforts to dispose of the truck under such terms as to net the plaintiff $1000.00, but that he was unsuccessful. The defendant, as months passed, paid or caused to be paid, eight of the purchase money notes in the amount of $131.41 each. Thus the defendant's interest in the truck enlarged month by month, and at the time of the sale amounted to some $1350.00, an amount actually greater than plaintiff's interest in the truck.

The defendant testified that on several occasions, after it had developed that he could not sell the truck for an amount that would net the defendant $1000.00, he saw the plaintiff and offered him the truck back if the plaintiff would reimburse him for the amount he had in the truck, and that otherwise he would have to sell the truck upon such terms as would accomplish this.

The plaintiff denies that he saw the defendant on but one occasion, and according to the plaintiff's testimony this was after the defendant had had the truck for eight months. Plaintiff further testified that on this occasion the defendant told him that he was going to sell the truck for what he had in it, and that "When Mr. Lord called me, it was about a month before he sold it, and he offered it back to me for about $1690.00 or $1700.00, and I told him I did not have that kind of money, and that was not our deal. I told him that if he sold it for $5,000.00, I was just look-

ing for $700.00. I said, 'I am expecting you to sell it at your price, but all I look for is $700.00 from you.'"

■ It is clear under the evidence that after the defendant, as consignee factor, had been unsuccessful in selling the truck according to instructions of the plaintiff, which instructions were assented to by defendant, and after the defendant's interest in the truck had grown larger than plaintiff's, he offered to return the truck to the plaintiff provided plaintiff reimbursed him the amount he had in the truck, otherwise, as he notified the plaintiff, he intended to sell the truck to anyone who would make him whole on the transaction. A month later the defendant did sell the truck for an amount sufficient only to reimburse himself for his investment in the truck, the purchaser assuming the four unpaid purchase money notes.

We are of the conclusion that the period of one month between the notification of the plaintiff by the defendant of his intent to sell unless the plaintiff reimbursed him for his investment in the truck was the grant of a reasonable time to the plaintiff in which to act, if he intended to do so.

Still one of the leading cases defining the rights of a factor to sell goods entrusted to him and in which he has acquired an interest by advances is William & James, Brown & Co. v. McGran, 14 Pet. 479, 10 L.Ed. 550. In his opinion in this case Justice Story observed: "We understand the true doctrine on this subject to be this: Wherever a consignment is made to a factor for sale, the consignor has a right, generally, to control the sale thereof, according to his own pleasure, from time to time, if no advances have been made or liabilities incurred on account thereof; and the factor is bound to obey his orders. This arises from the ordinary relation of principal and agent. If, however, the factor makes advances, or incurs liabilities on account of the consignment, by which he acquires a special property therein, then the factor has a right to sell so much of the consignment as may be necessary to reimburse such advances or meet such liabilities; unless there is some existing agreement between himself and the consignor, which controls or varies this right. Thus, for example, if, contemporaneous with the consignment and advances or liabilities, there are orders given by the consignor which are assented to by the factor, that the goods shall not be sold until a fixed time, in such a case, the consignment is presumed to be received by the factor subject to such orders; and he is not at liberty to sell the goods to reimburse his advances or liabilities, until after that time has elapsed. The same rule will apply to orders not to sell below a fixed price; unless, indeed, the consignors shall, after due notice and request, refuse to provide any other means to reimburse the factors. And in no case will the factor be at liberty to sell the consignment contrary to the orders of the consignors, although he has made advances or incurred liabilities thereon, if the consignor stands ready and offers to reimburse and discharge such advances and liabilities."

In Davis v. Kobe, 36 Minn. 214, 30 N. W. 662, 1 Am.St.Rep. 663, Supreme Court of Minnesota stated there can be no doubt of the proposition that in a case where the protection of the factor himself against loss becomes necessary, his discretion as to the time, price and place of sale would be complete and unlimited even by positive instructions. Phillips v. Scott, 43 Mo. 86, 97 Am.Dec. 369. See also, Beadles v. Hartmus, 7 Baxt., Tenn., 476; Nelson v. Chicago, etc., R. R. Co., 2 Ill.App. 180.

■ In an excellent annotation to be found in 40 A.L.R. at page 393, the general rule, abundantly supported by citation of authorities from a large number of our states, is stated as follows: "Even where instructions as to time, price, or place of sale were given by the owner prior to, or contemporaneously with, advances made or liability incurred by the factor, or the consignment was made subject to future instructions by the owner in that regard, the factor may, in order to secure his advances, sell the goods contrary to such instructions, or without instructions, upon the owner's failure, after being called upon to do so, to reimburse or secure him."

To like effect is the rule stated by Mechem. See Mechem on Agency, Vol. 2, 2d Ed., Sec. 2527.

The Supreme Court of Mississippi, writing to the question now being considered, in Gridley, Maxon & Co., v. Turner, 179 Miss. 890, 176 So. 733, 737, 177 So. 362, stated the rule as follows: "The owner of the property has undoubtedly the right to impose terms on his commission merchant as to the time of sale or the price, or both. The restriction upon that general right is that, after he has obtained money, credit, or goods, from his agent, on the property, he cannot require the agent to hold until he orders a sale unless the owner shall repay the advances or take up the liability, for these were made or incurred on the faith of the right implied in such general consignments of getting the money or meeting the liabilities by a discretionary sale."

We have found no case from this jurisdiction pertaining to the question now being considered. The weight of authority from other sources abundantly establishes the doctrine as set forth in the above citations, and we find no reason to question its persuasive authority.

This being so it follows that the court below misapplied the law to the facts as developed. It was therefore error to enter the judgment for the plaintiff. This cause must therefore be reversed.

Reversed and remanded.

## On Rehearing.

HARWOOD, Judge.

In his brief in support of his application for rehearing appellee's counsel asserts that we were misled by appellant's emphasis and direction of his argument toward count 2 of the complaint, and asserts that he, counsel for appellee, may have been remiss in failing to point out in his original brief that the judgment of the lower court is properly referable to count 1, the common count for money had and received.

We think a full answer to this contention is found in the original brief filed by counsel for appellee wherein he states: "The evidence made it apparent during the trial that the plaintiff could not recover for money had and received. So with leave of the court during the trial at the close of his case, the plaintiff amended to add count two."

Counsel further contends that the judgment of the lower court should be sustained on the theory that the transaction between Werneth and Lord constituted a sale of the truck to Lord, as evidenced by the bill of sale, and was not an agency transaction. If this theory can be maintained it must be under count 2.

Count 2 itself clearly spells out that Lord was a factor of Werneth's to sell the truck. While a bill of sale was given by Werneth to Lord for the truck, both parties treated this merely as a convenience to forward the sale of the truck by Lord. Again we quote from appellee's original brief as to the nature of this transaction: "He (Werneth) found it necessary to sell the truck. So August 15, less than four months after he bought it, plaintiff approached Defendant Lord, the appellant here. Lord was a professional long time used car-truck buyer-seller-broker. Lord didn't want to buy the equity outright. However, he agreed to sell it for the Plaintiff and advanced him $300.00. The agreement is clear. Lord gave Plaintiff a receipt, which expresses it. (Here counsel sets out the receipt shown in opinion above.)

\* \* \* \* \* \*

"4) On the same day as part of the transaction, for the purpose of facilitating the closing of such sale as Lord might make Werneth gave him a 'bill of sale' to show 'title.' "

We think appellee's counsel's above statements made in his original brief are fully supported by the pleadings and evidence. This being so the legal principles applied in the original opinion necessitate the conclusions there reached. The application for rehearing is therefore denied.

Application denied.