STANDARD OIL CO. OF KENTUCKY *et al. v.* STATE *ex rel.,* ATTORNEY-GENERAL.

[65 South. 468-61 South. 981.]

1. MONOPOLIES. *Trust and combinations in restraint of trade. Action for penalty. Jurisdiction. Commerce. Intrastate commerce. Imports. Commerce. Concurrent power to govern. Inter-state Commerce. Anti-trust laws. Offenses. Statutes Pleading. Appearance. Waiver of objection. Jurisdiction acquired. Special Appearance.*

Where several oil companies formed a combination whereby the stock of each was transferred to the Standard Oil Company, the purpose being to destroy competition and monopolize the trade in petroleum throughout the United States, and each of the subsidiary companies was assigned certain territory in which to do

business, the state of Mississippi being assigned to the Standard
Oil Company of Kentucky, and such company, in furtherance
of the conspiracy and to destroy competition, on numerous occa-
sions offered petroleum for sale on the same day, in different
localities of the state at different prices. In such case the con-
spiracy being one having as one of its objects a monopoly of that
portion of the trade lying wholly in Mississippi, to be accom-
plished, in part at least, by transactions lying wholly within the
state, was punishable under the laws of the state.

2: TRANSACTIONS CONSTITUTING INTRASTATE COMMERCE. *Imports.*
Sales and distributions of petroleum where made by a company
after the petroleum had been received by it in this state and
had become incorporated into the general Map of property
therein, constituted intrastate commerce, and are governed by
state's laws.

3. INTERSTATE AND INTRASTATE COMMERCE. *Concurrent power to govern.*
A conspiracy which has for its object the creation of monopoly only
in that part of the commerce in a commodity which is intra-
state is subject only to the laws of the state affected thereby;
but one having for its object the creation of a monopoly in
both interstate and intrastate commerce in a commodity is
necessarily subject to the laws both of the general government
and of the state affected thereby.

4. INTERSTATE COMMERCE. *Concurrent power to punish.*
A conspicacy to monopolize both inter and intrastate commerce in
a commodity but to be consumated by dealing with the com-
modity only while it is the subject of an interstate transaction
is punishable only under the laws of the general government.

5. INTRASTATE COMMERCE. *What law governs.*
A conspiracy to monopolize trade in any commodity, to be punish-
able under state laws, must have as one of its objects a monopoly
in the intrastate trade, to be accomplished in part at least by
transactions which are also wholly intrastate.

6. MONOPOLIES. *Anti-trust laws. Action for penalty. Pleading.*
The fact that in a suit by the state against several oil companies
for the penalty for violating the anti-trust statute, the bill prayed
for the imposition of separate and joint penalties was immaterial,
since each is liable for the full penalty.

7. MONOPOLIES. *Anti-trust law. Action for penalty. Pleading.*
Where a bill was filed by the state against several oil companies
for the penalty for the violation of the anti-trust law of the

state, it was not error for the court to refuse to eliminate from the bill, facts which also disclosed a violation of the federal anti-trust law. When the two offenses against the federal and the state law are part and parcel of the same conspiracy.

8. ENTERING APPEARANCES. *Waiver of objection.*

Where in an action against two foreign corporations, their attorney entered into a written agreement with plaintiff's attorney agreeing that the two companies would appear in the case without further process and continued; "It is however expressly understood that this agreement is merely to facilitate the progress of the case and defendants are not to be understood thereby as waiving any of their defenses, or as waiving their right to object to the jurisdiction of this court to entertain this suit because of their nonresidence." Such an agreement was a waiver of process and an entering of appearance by the corporations.

9. APPEARANCE. *Jurisdiction acquired. Special appearance.*

Where a summons or citation or the service thereof is quashed on motion of a defendant, he gains a continuance of the cause, but nothing else, since, as provided by Code 1906, section 3946, his appearance for the purpose of the motion gives the court jurisdiction of his person for all purposes of the case.

APPEAL from the chancery court of Lauderdale county. HON. SAM WHITMAN, Chancellor.

Suit for penalties for the violation of the anti-trust laws of the state of Mississippi, on the relation of the attorney-general against the Standard Oil Company of Kentucky and others. From an order overruling their demurrer, defendants appeal.

The facts are fully stated in the opinion of the court.

*Hunter C. Leak, Humphrey, Middleton & Humphrey,* and *Mayes & Mayes,* for appellants.

*Ross A. Collins, Frank Johnston* and *Geo. H. Ethridge,* for appellee.

SMITH, J., delivered the opinion of the court.

This is a suit instituted by the attorney-general to recover from appellants the penalties prescribed by our

anti-trust statute for an alleged violation of the statute by them. This is its second appearance in this court. When here before, the only defendant to the bill was the Standard Oil Company of Kentucky, and we then held that the bill failed to state a cause of action, because of the failure to allege that the sales made on the same day in different localities at different prices were made for the purpose of destroying competition. On the return of the cause to the court below an amended bill was filed, bringing in new parties defendant, to wit, the Standard Oil Company of New Jersey and the Standard Oil Company of Louisiana, and alleging, with great wealth of detail, a conspiracy made for the purpose of monopolizing the trade in petroleum and its products. Afterwards a supplemental bill was filed making the Galena Signal Oil Company a party defendant. To these bills general and special demurrers were interposed by the Standard Oil Company of Kentucky, and the other defendants appeared specially and excepted to the jurisdiction of the court. These demurrers and exceptions were overruled, and an appeal granted by this court to settle the principles of the case.

The grounds of the general demurrer filed by the Standard Oil Company of Kentucky here relied on are: First, "the said amended bill shows no cause of action against this defendant which is cognizable by this court or by any state court of Mississippi;" second, "the said amended bill does not follow up and amend the original bill, but is a departure therefrom, and from the judgment and decree of the supreme court heretofore rendered in this cause, and is an attempt to state another and a wholly different cause of action from that attempted to be stated in the original bill;" and third, "the said amended bill is multifarious." These will be taken up and disposed of in the order here set forth.

Under the first ground of this demurrer the contention of counsel for appellants is that the amended

bill presents a case of a conspiracy to destroy competi-
tion, and to monopolize interstate commerce, in
petroleum products, and therefore a violation of the
federal anti-trust law, cognizable only in the federal
courts. The amended bill set forth at great length the
formation of the original Standard Oil Trust of 1882
by a large number of persons and corporations engaged
in the petroleum industry, followed later by the incor-
poration of the Standard Oil Company of New Jersey,
the name of which corporation was afterwards changed
to the Standard Oil Company, which company acquired
all of the stock of the corporations then parties to the
trust agreement, and thereby practically took the place
of the trustees provided for therein, all of which was
for the purpose of enabling the parties to the original
agreement, and afterwards the Standard Oil Company
and its subsidiary corporations, to destroy competition
and monopolize the trade in petroleum and its products
throughout the United States and its territories, includ-
ing the state of Mississippi; that in furtherance of this
conspiracy in which all of the parties defendant to the
bill participated, the territory in which each of the sub-
sidiary corporations was to do business was assigned
to it, and no other corporation was permitted to do
business therein; that the prices at which petroleum
products were to be sold were, after its organization,
fixed by the Standard Oil Company, which company
controlled and directed all of the operations of the
subsidiary companies; that, in furtherance of the design
of this trust and combination to monopolize the trade in
petroleum products, the state of Mississippi was set apart
to the Standard Oil Company of Kentucky, which com-
pany was given the exclusive privilege of making sales
and distribution of petroleum products therein; that
this company has been continuously from the 1st day of
January, 1906, engaged in the sale and distribution of
petroleum products in this state, maintaining for that

purpose depots in the various counties thereof, from
which sales and distributions are made by means of tank
wagons; that other persons, firms, and corporations.
are engaged in Mississippi 'in the sale and distribution
of petroleum products who are not acting with appel-
lants and have no connection with the combination and
conspiracy complained of; that in furtherance of this
conspiracy the Standard Oil Company of Kentucky on
numerous occasions offered for sale petroleum products
on the same day in different localities of the state at
different prices, the difference of freight and other
necessary expenses of sale and delivery considered, for
the purpose of enabling the conspirators to monopolize
the trade therein in Mississippi and throughout the
United States and its territories.   The bill further set
forth that the combination here complained of was
ordered to be dissolved into its several component parts
by the supreme court of the United States in the case
of *Standard Oil Co. v. United States,* 221 U. S. 1, 31 Sup.
Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann.
Cas. 1912D, 734, but that notwithstanding the conspir-
acy had remained in effect, and that the conspirators
had continued to act in concert as theretofore in the
same manner and for the same purpose.   The prayer
was for the imposition of the penalties provided by our
anti-trust law and for the exclusion of appellants from
doing business in the state.   From this general state-
ment of the allegations of the bill it appears that the
conspiracy here complained of is one that has for its
object the monopolizing of both the inter and intrastate
commerce in petroleum products, that portion of this
commerce which is wholly within the state of Mississippi
being monopolized, or attempted to be monopolized, by
the exclusion therefrom of all of the corporations in-
cluded in this conspiracy, and permitting the Standard
Oil Company of Kentucky alone to deal in petroleum
products therein, and by that company's selling such

products, within the state at different places on the same day at different prices, whenever it becomes neces-- sary so to do, in order to destroy competition at such places.

It is true that no petroleum is produced in the state of Mississippi, and all petroleum sold and distributed by the Standard Oil Company of Kentucky in this state, must necessarily have been imported from another state. These sales and distributions, however, as we, understand the bill, were made by this company after the petroleum products had been received by it in this, state and had become incorporated into the general mass, of property therein; they therefore constituted intra- state commerce, and are governed by the state's laws, for an article which is one of interstate commerce by reason of the fact that it is the subject of a sale by a citizen of one state to a citizen of another, and it being, transported from one state to the other, loses its char- acter as such when the transportation has been com- pleted and it is mingled with and becomes a part of the general mass of property in the state of its destina- tion. It then becomes, in so far as the power of the general and state governments to regulate commerce is concerned, subject exclusively to the operation of the state laws. *Leisey* v. *Hardin,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128. The bill, therefore, presents a case of the violation of the laws both of the general govern- ment and of the state of Mississippi. This seems not to be disputed by counsel for appellant, their contention being that under the allegations of the bill the principal ob- ject of this conspiracy was to enable the conspirators to monopolize interstate commerce, and that the intent there alleged to monopolize intrastate commerce is a mere incident to the principal object, and that the two intents are so inseparably connected that the jurisdic- tion of the federal courts to punish therefor must be, exclusive. In this we think counsel are in error. The

monopoly of intrastate commerce is one of the material objects of this conspiracy, and such a monopoly is not necessary, if such fact be material, to the maintenance of a monopoly of interstate commerce, the monopoly of the commerce of one character simply constituting a powerful factor in bringing about a monopoly of the other.

A conspiracy which has for its object the creation of a monopoly only in that part of the commerce in a commodity which is interstate is subject only to the laws of the general government, and one which has for its object the creation of a monopoly only in that part of the commerce in a commodity which is intrastate is subject only to the laws of the states affected thereby; but one having for its object the creation of a monopoly in both the inter and intrastate commerce in a commodity is necessarily subject to the laws both of the general government and of the states affected thereby.

It is true that under our form of government a conspiracy and acts done in furtherance thereof may violate both the laws of a state and of the general government, but be punishable only under the laws of the latter, and it may be that a conspiracy to monopolize both inter and intrastate commerce in a commodity, but to be consummated by dealing with the commodity only while it is the subject of an interstate transaction, would be punishable only under the laws of the general government.

In the case at bar, if, with the intent to monopolize commerce in petroleum products throughout the United States, appellants had agreed to do and had actually done only such things as relate to that portion of the commerce therein which is intrastate, they would have been punishable only under the laws of the general government, even though they intended to, and in fact did thereby, monopolize also that portion of the commerce therein that is wholly intrastate. In other words, a conspiracy to monopolize trade in any commodity to

be punishable under state laws must have as one of its
objects a monopoly in the intrastate trade therein to be
accomplished in part at least by transactions which are
also wholly intrastate. The controversy here com-
plained of, having as one of its objects a monopoly of
that portion of the trade in petroleum products which
lies wholly within the state of Mississippi, to be accom-
plished in part at least by transactions lying wholly
within the state, is punishable under the laws thereof.
Whether or not this conspiracy is punishable under the
laws of the general government is immaterial, and has
no real bearing on this controversy, for it is beyond the
power of that government to regulate commerce which
lies wholly within the state, and its laws can have no
effect thereon, except in so far as it is necessarily af-
fected thereby by reason of its intimate connection with
interstate commerce.

The foregoing views find support in, and the question
here under consideration seems to have been fully
answered by, the case of *Addyston Pipe Co.* v. *United
States,* 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136. In
that case a proceeding was commenced in behalf of the
United States, under the so-called anti-trust act of Con-
gress, passed July 2, 1890, 26 Stat. 209, ch. 647 (U. S.
Comp. St. 1901, p. 3200). It was undertaken for the
purpose of obtaining an injunction perpetually enjoin-
ing the six corporations, who were made defendants,
and who were engaged in the manufacture, sale, and
transportation of iron pipe at their respective places of
business in the states of their residence, from further
acting under or carrying on the combination alleged in
the petition to have been entered into between them, and
which was stated to be an illegal and unlawful one,
under the act above mentioned, because it was in re-
straint of trade and commerce among the states, etc.

"The trial court dismissed the petition (*United States
v. Addyston Pipe & Steel Co.* (C. C.) 78 Fed. 712), but

107 Miss. 25

upon appeal to the circuit court of appeals the judgment of the court below was reversed, with instructions to enter a decree for the United States perpetually enjoining defendants from maintaining the combination in cast-iron pipe as described in the petition, and from doing any business under such combination.''

The six corporations defendant to the petition were domiciled, one in Ohio, one in Kentucky, two in Alabama, and two in Tennessee.

''It was charged in the petition that on the 28th of December, 1894, the defendants entered into a combination and conspiracy among themselves, by which they agreed that there should be no competition between them in any of the states or territories mentioned in the agreement (comprising some thirty-six in all), in regard to the manufacture and sale of cast-iron pipe, and that in obedience to such agreement and combination, and to carry out the same, the defendants had, since that time, operated their shops, and had been selling and shipping the pipe manufactured by them into other states and territories, under contracts for the manufacture and sale of such pipe with citizens of such other states and territories.''

One of the means by which this monopoly was to be maintained was that certain cities were assigned to each corporation in which none of the other conspirators would bid against it for sale of pipe, or, rather, the bids of the other members of the conspiracy would always be higher than that made by the corporation to which the cities had been assigned. A sale made by one of these corporations was an interstate one, and therefore interstate commerce, when the city in which the sale was made was situated in a state other than the one of the corporation's factory, and was intrastate when the factory and the city wherein the sale was made were both in the same state. The judgment of the circuit court of appeals, reversing the decree of the trial court

and directing that a decree be entered enjoining the defendants to the petition from maintaining the combination in cast-iron pipe and from doing business under such combination, was modified by the supreme court so as to exclude therefrom that portion of the combination which affected intrastate commerce and be limited to that portion thereof which affected interstate commerce.

It will be observed that this conspiracy or combination had for its object a monopoly of both the inter and intrastate commerce within states and territories mentioned in the agreement, thirty-six in number, the monopoly of the commerce of each character to be brought about and maintained, as in the case at bar, by transactions both interstate and intrastate.

In its opinion modifying the decree of the lower court the supreme court, through Mr. Justice PECKHAM, said:

"The views above expressed lead generally to an affirmance of the judgment of the court of appeals. In one aspect, however, that judgment is too broad in its terms—the injunction is too absolute in its directions— as it may be construed as applying equally to commerce wholly within a state as well as to that which is interstate or international only. This was probably an inadvertence merely. Although the jurisdiction of Congress over commerce among the states is full and complete, it is not questioned that it has none over that which is wholly within a state, and therefore none over combinations or agreements so far as they relate to a restraint of such trade or commerce. It does not acquire any jurisdiction over that part of a combination or agreement which relates to commerce wholly within a state, by reason of the fact that the combination also covers and regulates commerce which is interstate. The latter it can regulate, while the former is subject alone to the jurisdiction of the state. The combination herein described covers both commerce which is wholly within a state and also that which is interstate.

"In regard to such of these defendants as might reside and carry on business in the same state where the pipe provided for in any particular contract was to be delivered, the sale, transportation, and delivery of the pipe by them under that contract would be a transaction wholly within the state, and the statute would not be applicable to them in that case. They might make any combination they chose with reference to the proposed contract, although it should happen that some nonresident of the state eventually obtained it.

"The fact that the proposal called for the delivery of pipe in the same state where some of the defendants resided and carried on their business would be sufficient, so far as the act of Congress is concerned, to permit those defendants to combine as they might choose, in regard to the proposed contract for the delivery of the pipe, and that right would not be affected by the fact that the contract might be subsequently awarded to some one outside of the state as the lowest bidder. In brief, their right to combine in regard to a proposal for pipe deliverable in their own state could not be reached by the federal power derived from the commerce clause in the Constitution.

"To the extent that the present decree includes in its scope the enjoining of defendants thus situated from combining in regard to contracts for selling pipe in their own state, it is modified and limited to that portion of the combination or agreement which is interstate in its character. As thus modified the decree is affirmed."

But it is said by counsel for appellants that the federal anti-trust law as construed in *United States* v. *E. C. Knight Company,* 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, does not include agreements to manufacture, and that in modifying this injunction which was a mere minor feature of the decision, the court pointed out that the injunction was too broad—

"because, said they, inasmuch as these people who were engaged in these transactions were manufacturers, and

consequently might contract about the manufacture of an article, the sale of that article, and the delivery of that article, and because the whole process of manufacture, sale, and delivery might take place within the limits of one state, to such a transaction the act of Congress could not extend; and, therefore, the injunction by its terms should not be broad enough to include a transaction of that sort. That feature of the decision has no application whatever to the case at bar, and that for the reason that this amended bill shows clearly that the Standard Oil Company is not occupying Mississippi with an article produced in Mississippi, to be vended and delivered within the limits of the state of Mississippi; but, on the contrary, the whole case made in the bill is to the effect that the article dealt with, and about which this suit is brought, was not produced by the Kentucky company, but by another company. Neither was it produced by any agency whatever within the limits of the state of Mississippi; it was not a Mississippi manufacture or production; the bill shows all through that it was an article introduced by transportation and commerce across the state line; it was a foreign production as to the state of Mississippi; the subject of commerce, alone, so far as the state of Mississippi is concerned, and nothing else. Wherefore, as we have shown, this bill does not fall within the qualified reservation made in the Addyston pipe case, but clearly falls under the rule expounded in the three cases which we have cited and relied on above."

Counsel, we think, misconceive the ground of this decision. It is true that the parties to the combination were manufacturers, but the court pointed out that, although a combination simply to control manufacture was not a violation of the act of Congress, because such a contract or combination did not directly control or affect interstate commerce, but that contracts for the sale and transportation to other states of specific

articles were proper subjects for regulation because they did form part of such commerce, and that the combination then under consideration related, not to the manufacture, but to the sale and delivery of specific articles. The decision in all of its aspects proceeds altogether on the theory that the combination there complained of, both in its interstate and intrastate character, was one relating to the sale and delivery of a commodity, and the court nowhere gives as a reason for the modification of the injunction that the parties to the combination were manufacturers, but places it solely upon the ground that the federal statute has no application where the sale, transportation, and delivery of an article all takes place within a state. Had the court proceeded on the theory that the combination had for its purpose a monopoly in the manufacture and not in the sale and delivery of articles, the injunction, under the authority of the Knight Case, must necessarily have been dissolved *in toto* instead of partially.

In support of their contention that the jurisdiction of the federal courts over this alleged conspiracy is exclusive, counsel for the Standard Oil Company of Kentucky have called our attention to the following language contained in the opinion of the supreme court of the United States in the case of *Standard Oil Co.* v. *United States,* beginning at page 81 of 221 U. S., at page 524 of 31 Sup. Ct., at page 653 of 55 L. Ed. (34 L. R. A. [N. S.] 834, Ann. Cas. 1912D, 734):

"We think that, in view of the magnitude of the interests involved and their complexity, the delay of thirty days allowed for executing the decree was too short, and should be extended so as to embrace a period of at least six months."

"During these six months, therefore," say counsel, "it was lawful to continue the then existing combination," and if the state be now permitted to recover from appellants the penalties alleged to have been incurred by

them for maintaining the combination during that time, they will thereby be punished for doing what the supreme court of the United States has adjudged lawful. ''This but illustrates,'' they say, ''in another way the confusion that must inevitably result where there is a proceeding taken under the Sherman anti-trust law and a proceeding taken under a state trust law growing out of exactly the same facts. One or the other must necessarily be exclusive; otherwise confusion will inevitably result; that is, one court may, for reasons which seem equitable, permit a combination to exist for a limited period, in the interest of the public, while the other court may be visiting the same corporation with enormous penalties for continuing the same combination during exactly the same period.''

We think counsel misconceive the effect of this modification which the supreme court directed the trial court to make in its decree. The combination which was and had been adjudged to be in violation of law was not thereby made lawful during the six months given it in which to dissolve, nor was it thereby relieved from any penalties incurred under any statute, or from liability to damage inflicted upon any one by continuing in existence for that time. The court did not so intend; but, even if it had, it would thereby have exceeded its jurisdiction, for the reason that under our form of government no court, unless specially authorized by law, has the power to grant permission to do unlawful acts.

In order to dissolve the combination as it then existed, it was necessary for the Standard Oil Company of New Jersey to dispose of the stock owned by it in the other corporations, by means of which it controlled their operations. This could not be done on the instant. It was therefore necessary to grant it time in which to do so, and the granting of this time in which the decree should be complied with simply meant that the parties to the combination would not be in contempt of court by

not complying with its decree before the expiration thereof. But even if we concede that the existence of this combination during these six months was lawful, it was lawful only in so far as the laws of the general government are concerned, and the parties thereto were not, by reason of this decree, licensed to engage in commerce lying wholly within a state in violation of the laws thereof; for, as we have heretofore pointed out, and as the supreme court of the United States has more than once decided, the general government can exercise no control over commerce that is wholly intrastate. The confusion which counsel say if the result of permitting the courts, both of the general government and of the states, to deal with causes of this character, if confusion in fact it can be called, is only such as will necessarily arise in all cases where the laws both of the general government and of the states have been violated.

We have not left out of view the line of cases cited by counsel, of which *Standard Oil Company* v. *United States,* 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734, *Swift* v. *United States,* 196 U. S. 375, 25 Sup. Ct. 276, 49 L. Ed. 518, and *Montague & Co.* v. *Lowrey,* 193 U. S. 38, 24 Sup. Ct. 307, 48 L. Ed. 608, are a type, holding that a case is stated under the federal anti-trust laws of which the federal courts have jurisdiction, although the combination and agreement complained of includes both interstate and intrastate transactions. The views herein expressed are not in conflict with these cases, but rather are in accordance therewith, for, as we have pointed out, the combination and agreement of the character here under consideration may violate the laws both of a state and of a general government and be punished in the courts of each.

There is no merit in the remaining grounds of the general demurrer, for the amended bill does not "state another and wholly different cause of action from that attempted to be stated in the original bill"; it simply

states the same cause of action, attempted tó be stated in the original bill, more fully and probably in unnecessary detail, and the new defendants, being parties to the conspiracy alleged in the bill, were properly made defendants thereto. The fact that the bill prays for the imposition of separate and not joint penalties is immaterial. The course here pursued with reference to the joinder of defendants is the same as that pursued in the cases of *Grenada Lumber Co.* v. *State,* 98 Miss. 536, 54 So. 8, and *Dukata* v. *Adams,* 101 Miss. 433, 58 So. 475.

The special demurrers which seek to eliminate from the bill all of the allegations which set forth facts which disclose a violation of the federal anti-trust law were properly overruled, conceding without deciding that this question can be thus presented. The intent to violate the federal statute is so intimately connected with the intent to violate the statute, in fact being a part and parcel of the same conspiracy, that one cannot be intelligently set forth without disclosing the other; or, to be more accurate, the one can be more intelligently set forth in language which also discloses the other. Moreover, the facts thereby disclosed may be necessary in order to connect the other defendants with the acts of the Standard Oil Company of Kentucky, and to enable the court to determine the true intent with which the various sales of petroleum products set forth in the bill were made by this company. The allegation contained in paragraph 24 of the bill setting forth the dissolution by the federal courts in 1911 of the combination here complained of, as it then existed, simply explains why the methods alleged to have been pursued by appellants in order to continue to maintain a monopoly in petroleum products after this dissolution was ordered were different from those alleged to have been pursued by them prior thereto, and therefore the allegation is proper, though probably not a necessary one.

This brings us to the exceptions filed by the other defendants to the jurisdiction of the court. There can be

no question of the court's jurisdiction of the subject-matter, and if it had jurisdiction of the person of the defendants, its jurisdiction was complete. These other defendants have no local agent in this state upon whom service of process could be had, so that they were summoned by publication in a newspaper. They appeared specially and excepted to the jurisdiction of the court. The ground of these exceptions was that the service of process by publication was void for the reason that:

"Foreign corporations can be served with process in a state only when doing business therein, and such service must be upon an agent who represents the corporation in such business."

The court overruled these exceptions and the Standard Oil Company of New Jersey and the Standard Oil Company of Louisiana joined in this appeal. After publication for these defendants had been made, the following written agreement was entered into between the attorney-general and Mr. Hunter C. Leake, attorney of record for the Standard Oil Company of New Jersey and the Standard Oil Company of Louisiana, and was by the attorney-general filed in the court below among the papers in this cause:

"In this cause it is agreed between the attorney-general, representing the state, and Hunter C. Leake, representing the Standard Oil Company of Louisiana and the Standard Oil Company of New Jersey, that the two companies named will appear in this cause without further process, making such appearance to the November term, 1913, and plead, answer or demur to the bill then.

"It is, however, expressly understood, that this agreement is merely to facilitate the progress of this cause, and the two companies named herein are not to be understood thereby as waiving any of their defenses, or as waiving their right, if any they have, to object to the jurisdiction of this court to entertain this suit as to them or either of them because of their nonresidence of the

state of Mississippi, and the fact claimed by them that they are not doing business in this state, or any other defensive point which they may desire to make.

"This September 6, 1913.

"[Signed]      ROSS A. COLLINS,
"Attorney-General, State of Mississippi.
"HUNTER C. LEAKE."

This agreement, which is altogether ignored by these exceptions, constitutes in plain and unambiguous language a waiver of process and the entering of an appearance by the defendants in the cause. The reservation of all defenses to the bill contained in this agreement was unnecessary, and added nothing thereto, and the reservation of the right to object to the jurisdiction of the court "to entertain this suit as to them, or either of them, because of their nonresidence in the state of Mississippi, and the fact claimed by them that they are not doing business in this state," cannot be construed to be the reservation of a right to object on the ground that no process had been served, for the occasion of the making of the agreement was that "further process" might be waived.

This question, however, is of no material importance, for the reason that, had the agreement not been made, or, conceding that appellant had the right under the agreement to appear specially for the purpose of filing the motion requesting the court to quash the citation, and conceding, further, that the citation should have been quashed in response to appellant's request, the issuance of further process for them would not have been necessary, for:

"Where a summons or citation or the service thereof is quashed on motion of a defendant he gains a continuance of the cause, but nothing else, since, as provided by Code 1906, section 3946, his appearance for the purpose of the motion gives the court jurisdiction of his person for all purposes. of the case." *Illinois Central*

*Railroad Company* v. *Ann Swanson,* 92 Miss. 485, 46 So. 83.

Affirmed and remanded, with leave to appellants to answer within sixty days after mandate is filed in court below.

*Affirmed and remanded.*