# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00094-SCT

*THE STATE OF MISSISSIPPI, EX REL. LYNN FITCH, ATTORNEY GENERAL*

*v.*

*YAZAKI NORTH AMERICA, INC., LEONI WIRING SYSTEMS, INC., LEONISCHE HOLDING, INC., G.S.W. MANUFACTURING, INC., G.S. WIRING SYSTEMS, INC., DENSO INTERNATIONAL AMERICA, INC., AND AMERICAN FURUKAWA, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/2019 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| TRIAL COURT ATTORNEYS: | CHARLES EDWIN ROSS |
| | CATOUCHE JUDGE BODY |
| | DANIEL J. MULHOLLAND |
| | ALAN W. PERRY |
| | FRED KRUTZ, III |
| | WILLIAM N. REED |
| | CHARLES E. GRIFFIN |
| | SUZANNE GRIGGINS KEYS |
| | MICHAEL B. WALLACE |
| | STEPHEN L. THOMAS |
| | REBECCA L. HAWKINS |
| | GLENN S. SWARTZFAGER |
| | JAMES W. SHELSON |
| | JOHN A. CRAWFORD, JR. |
| | CRYSTAL WISE MARTIN |
| | PATRICK RYAN BECKETT |
| | CABLE MATTHEW FROST |
| | LINDA FAYE COOPER |
| | JACK E. PACE, III |
| | SIMON TURNER BAILEY |
| | BRENTON WEBSTER COLE |
| | BRIAN K. GRUBE |

JOHN M. MAJORAS
CHARLES EDWARD COWAN
RATOYA JANAE GILMER
JOHN H. CHUNG
LA'TOYIA JENESSA SLAY
TIFFANY D. LIPSCOMB-JACKSON
MICHELLE KAREN FISCHER
STEVEN FRANKLIN CHERRY
LARRY S. GANGNES
KENNETH RAY DAVIS, II
JAMES L. COOPER
MICHAEL A. RUBIN
CHRISTINA BARRADAS BRENHA
KATHERINE ELAINE CLEMONS
HANS N. HUGGLER
STEPHANIE  ILANA  FINE
MOLLY  SUE  CRABTREE
DONALD MICHAEL BARNES
SETH BASTIANELLI
DAVID H. SUGGS
PRIYA L. SRINIVASAN
DEMETRA V. FRAWLEY
BRENT HAZZARD
JACQUELINE H. RAY
GERALD MOSES ABDALLA, JR.
GEORGE W. NEVILLE
STACEY K. GRIGSBY
EDGAR D. GANKENDORFF
ERIC BELIN
RICHARD B. SCHWARTZ
DAVID PATRICK DONOVAN

COURT FROM WHICH APPEALED:   MADISON COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT: OFFICE OF THE ATTORNEY GENERAL
BY: JACQUELINE H. RAY
DONALD L. KILGORE
MARY JO WOODS
BRENT HAZZARD
RICHARD B. SCHWARTZ
STUART H. SINGER
ERIC R. G. BELIN
EDGAR D. GANKENDORFF
MATTHEW L. DAMERON
WILLIAM A. ISAACSON
STACY K. GRIGSBY

ATTORNEYS FOR APPELLEES: LA'TOYIA JENESSA SLAY
JOHN A. CRAWFORD, JR.
CHARLES E. GRIFFIN
P. RYAN BECKETT
STEPHEN L. THOMAS
ALAN W. PERRY
SIMON TURNER BAILEY
FRED KRUTZ, III
DANIEL J. MULHOLLAND
MICHAEL B. WALLACE
CHARLES EDWIN ROSS
REBECCA L. HAWKINS
CHARLES EDWARD COWAN
WILLIAM N. REED
AMY CHAMPAGNE
JEREMY J. CALSYN
ALEXIS L. COLLINS
JOHN H. CHUNG
JACK E. PACE, III
DAVID H. SUGGS
DEMETRA V. FRAWLEY
MICHAEL F. TUBACH
MEGAN HAVSTAD
STEVEN FRANKLIN CHERRY
KEVIN MICHAEL GALLAGHER
PATRICK J. CAROME
SETH BASTIANELLI
DONALD M. BARNES
MOLLY CRABTREE

3

NATURE OF THE CASE:          CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE

DISPOSITION:          AFFIRMED - 04/30/2020

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     In 2012, the executives of several Japanese auto-parts manufacturers pled guilty to federal crimes based on an international scheme to fix the price of Automotive Wire Harness Systems (AWHS). Three years later, the State of Mississippi sued the American subsidiaries of these federally prosecuted companies. The State alleged violations of the Mississippi Consumer Protection Act (MCPA) and the Mississippi Antitrust Act (MAA), as well as a civil conspiracy to violate the MCPA and MAA. The trial court dismissed the State's complaint for failure to state a claim on which relief can be granted. The State appealed.

¶2.     After review, we affirm the trial court's finding that the alleged unfair trade practices were too remote in time to support the State's claim for injunctive relief under the MCPA. Also, the complaint alleges no "wholly intrastate" transactions that would make the alleged illegal cartel punishable under the MAA.[1] And because the State alleged no viable claim for a statutory violation, its civil-conspiracy claim—based solely on the alleged statutory violations—likewise fails. We affirm the judgment of dismissal.

### Background Facts & Procedural History

---

[1] ***Standard Oil Co. of Ky. v. State***, 107 Miss. 377, 65 So. 468, 471 (1914), *overruled in part on other grounds by* ***Mladinich v. Kohn***, 250 Miss. 138, 164 So. 2d 785 (1964).

4

**I.      The Attorney General's Complaint**

¶3.      On October 9, 2015, Attorney General Jim Hood,[2] on behalf of the State, sued nine[3] automotive component-parts manufacturers in Hinds County Chancery Court.  The State alleged these manufacturers—all manufacturing in the United States but *not* in Mississippi—had been part of an illegal cartel that fixed the prices of Automotive Wire Harness Systems (AWHS)—the electrical distribution system for motor vehicles.

¶4.      According to the complaint, the defendants sold AWHS to motor vehicle original-equipment manufacturers (OEMs), suppliers to OEMs, and distributors.  While the complaint explained that "OEMs include domestic OEMs such as the Big Three in Detroit (General Motors, Ford and Chrysler) and non-domestic OEMs who also operate manufacturing plants" such as "Nissan and Toyota manufactur[ing] cars in Mississippi," the complaint did not allege any defendant directly sold AWHS to the Nissan or Toyota plant in Mississippi during the relevant time period.  Rather, the complaint alleged that "[s]uppliers purchased Automotive Wire Harness Systems directly from Defendants or their co-conspirators, which they then sold to OEMs or other suppliers to OEMs."

¶5.      Ultimately, the AWHS were installed in vehicles manufactured and sold in the United States. The State alleged that Mississippians, by buying some of these vehicles, had indirectly purchased the defendants' inflated AWHS.  Mississippians had also indirectly purchased

---

[2] While this appeal was pending, Lynn Fitch was elected Mississippi's attorney general and assumed that role in this litigation.

[3] Originally, the State sued ten separate defendants but soon after stipulated to the dismissal of one defendant.

replacement AWHS from an auto-parts supplier.

¶6.     The State based its illegal-cartel allegations specifically on the federal criminal prosecutions of several of the defendant manufacturers' Japanese parent companies— prosecutions that ended three years earlier.  In 2012, executives for the parent companies entered a series of guilty pleas, admitting to meeting with the executives of other companies to discuss bids, fix prices, and allocate supplies of AWHS sold to United States automobile manufacturers.  The conspiracy began in early 2000 and lasted until January 2010.  As part of their guilty pleas, two of the parent companies agreed respectively to pay $200 million and $470 million in fines

¶7.     Citing the actions of defendants' Japanese parent companies, the State alleged the defendant United States manufacturers were part of a conspiracy to restrain trade, increase the price, and hinder competition of AWHS in the United States generally and Mississippi specifically. The State claimed this supposed agreement violated the Mississippi Consumer Protection Act (MCPA).  The State also alleged the defendants had violated the Mississippi Antitrust Act (MAA).  Finally, the State alleged a civil conspiracy.

## II.     The Defendants' Responses

¶8.     All nine defendants responded to the complaint with motions to dismiss.  Eight asserted lack of personal jurisdiction, improper venue, and failure to state a claim as grounds for dismissal.  *See* M.R.C.P. 12(b)(2) (dismissal based on lack of personal jurisdiction), M.R.C.P. 12(b)(3) (dismissal based on improper venue), and M.R.C.P. 12(b)(6) (dismissal based on failure to state a claim).  The ninth defendant, Yazaki North America, Inc., asserted

6

only improper venue under Rule 12(b)(3) and failure to state a claim under Rule 12(b)(6). Because Michigan-based Yazaki had opened a four-person office near the Nissan plant in Canton, Mississippi, it did not challenge Mississippi's personal jurisdiction.

### III. Venue Transfer

¶9. The Hinds County Chancery Court first considered the defendants' motions to dismiss for improper venue. The defendants had argued the MCPA's venue statute, Mississippi Code Section 75-24-9 (Rev. 2016), controlled. And under this statute, they contended, Hinds County was not an available venue. Instead of dismissal, the Hinds County chancellor granted both the defendants' and the State's alternative request to transfer the matter to chancery court in Madison County, where Yazaki's office was located. In the Hinds County chancellor's view, Madison County was "the only forum that could be even remotely consistent with the unambiguous and mandatory terms of Section 75-24-9."

### IV. Limited Discovery

¶10. With the motions to dismiss for lack of personal jurisdiction and failure to state a claim still pending,[4] the Madison County chancellor allowed the parties to engage in limited discovery aimed at the personal-jurisdiction question. *See Long v. Vitkauskas*, 287 So. 3d

---

[4] Following the transfer, the defendants renewed their motion to dismiss for improper venue in the Madison County Chancery Court, arguing Madison County also was not an available venue under Section 75-24-9. But this motion was later withdrawn following this Court's decision in *Purdue Pharma L.P. v. State*, 256 So. 3d 1, 5 (Miss. 2018), which held that, if "MCPA's venue statute provides no choice of venue for foreign corporations," instead of dismissing the action, a chancery court must "look to the general venue statute for chancery court actions." And if "the general venue statute for chancery courts also provides no venue for foreign corporations, [courts] must turn to the general venue statute for civil actions, Mississippi Code Section 11-11-3." *Id.*

171, 178 (Miss. 2019) (noting a trial court, when ruling on a motion to dismiss for lack of personal jurisdiction may "consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery'" (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002))). The parties stipulated that this discovery would require the production of confidential material. On June 30, 2017, the chancellor entered a protective order allowing the parties to file this material under seal. Consequently, although this is not a confidential case but instead is a matter brought on the public's behalf, most documents in the record from this date forward—including the chancellor's final order and the briefs on appeal—were filed under seal.

## V. Trial Court's Ruling

¶11. On January 5, 2017, the Madison County chancellor dismissed by agreement two of the defendant manufacturers—Fujikura America, Inc., and Leoni Wire, Inc.—for lack of personal jurisdiction. Two years later, the chancellor dismissed the remaining seven defendants: Yazaki; American Furukawa, Inc. (AFI); Denso International America, Inc. (DIAM); Leoni Wiring Systems, Inc. and Leonische Holding, Inc. (collectively, Leoni Defendants); G.S. Wiring Systems, Inc. (G.S. Wiring); and G.S.W. Manufacturing, Inc. (G.S.W.).

¶12. In a sealed order, the chancellor first determined Mississippi lacked general or specific personal jurisdiction over out-of-state defendants AFI, DIAM, the Leoni Defendants, G.S. Wiring, and G.S.W. Specifically, the chancellor found the State had failed to show these defendants had sufficient minimum contacts with Mississippi to satisfy due process.

¶13. Next, the chancellor found that, even if personal jurisdiction existed over all seven defendants, the complaint still failed to state a claim. Specifically, the chancellor held the State's MCPA claim failed because the alleged unfair trade practices were too remote to support the State's request for injunctive relief. The State's MAA claim failed because the State did not allege any "wholly intrastate conduct" as required by **Standard Oil Co. of Kentucky v. State**, 107 Miss. 377, 65 So. 468, 471 (1914), *overruled in part on other grounds by* **Mladinich v. Kohn**, 250 Miss. 138, 164 So. 2d 785 (1964). And the State's civil-conspiracy claim failed because it was based on alleged violations of the MCPA and MAA for which the State had no causes of action.

¶14. The chancellor gave the State thirty days to amend the complaint under Mississippi Rule of Civil Procedure 15. The attorney general declined to amend the State's claims. Instead, the State asked the chancellor to certify her order as final and appealable. The chancellor entered a final judgment on January 11, 2019. And the State appealed.

**Discussion**

¶15. The State asserts three errors on appeal—(1) the Hinds County Chancery Court misapplied the appropriate venue statute, (2) the Madison County Chancery Court failed to conduct a proper Rule 12(b)(2) personal-jurisdiction analysis, and (3) the Madison County Chancery Court failed to conduct a proper Rule 12(b)(6) analysis. Only the third issue need be discussed. Because the State's complaint failed to state a claim, the venue question becomes moot.[5] *Cf.* **F&S Sand, Inc. v. Stringfellow**, 265 So. 3d 170, 173 (Miss. 2019)

---

[5] The State argues the Hinds County Chancery Court's transfer ruling ran counter to **Purdue Pharma**, 256 So. 3d at 5. Consequently, it asserts, all orders entered after the

9

(holding that, because the plaintiff's claim was time-barred, the venue issue was moot). Similarly, because the complaint fails to state a claim, we need not address the State's personal-jurisdiction claims—especially since all the personal-jurisdiction evidence was filed under seal.[6]

¶16.    Zeroing in on the chancellor's Rule 12(b)(6) dismissal, we review this decision de novo. *Triplett v. S. Hens, Inc.*, 238 So. 3d 1128, 1130 (Miss. 2018). A Rule 12(b)(6) motion for failure to state a claim tests the legal sufficiency of the complaint. *Id.* So this Court's task on appeal is to "consider the legal sufficiency of the complaint anew." *Trigg v. Farese*, 266 So. 3d 611, 619 (Miss. 2018). When so considered, the State's complaint fails to state a claim for which relief can be granted under the MCPA, the MAA, or a civil-conspiracy theory.

## I.    Count I—Mississippi Consumer Protection Act (MCPA)

¶17.    Section 75-24-5(1) of the MCPA prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices affecting commerce . . . ." Miss. Code Ann. § 75-24-5(1) (Rev. 2016). But the purpose of the statute is not to punish past violations. Rather, the purpose of the MCPA is to restrain or enjoin unfair methods of

---

transfer to Madison County Chancery Court should be vacated. But the State fails to cite any authority for this proposition. Because the State's complaint fails to state a claim, dismissal was required as a matter of law, regardless of which chancellor entered the order or in which venue the order was entered.

    [6] We find analyzing the personal-jurisdiction issues raised without being able to relay fully the relevant facts and circumstances could only serve to confuse the bench and bar as to how to apply this Court's decision in cases involving similar claims. So we refrain from embarking on this unnecessary task.

10

competition through *injunctive* relief. Miss. Code Ann. § 75-24-9 (Rev. 2016). Section 75-24-5(1) makes clear that "[a]ction may be brought under Section 75-24-5(1) only under the provision of Section 75-24-9." *Id.* And Section 75-24-9 provides,

> [w]henever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

Miss. Code. Ann. § 75-24-9. While the MCPA also allows for the recovery of civil penalties for willful violations of Section 75-24-5, these monetary penalties may only be recovered "[i]n an[] action brought under Section 75-24-9." Miss. Code Ann. § 75-24-19(1)(b) (Rev. 2016). If there is no action for injunctive relief under 75-24-9, there is no action to recover civil penalties under Section 75-24-19.

¶18. When considering the sufficiency of the allegations to bring an action under 75-24-9, the chancellor noted that the State's complaint broadly alleged the defendant manufacturers' price-fixing conspiracy had "continu[ed] through the filing of this Complaint" in October 2015. But according to the attorney general's more specific factual allegations, the conspiracy ended in 2010, and the parent-company perpetrators pled guilty in 2012.

¶19. The State argued it could pursue an MCPA injunction based on past conduct because a statutory injunction, unlike a common-law injunction, does not require showing an irreparable injury is likely to occur. *See Conway v. Miss. State Bd. Of Health*, 252 Miss. 315, 324, 173 So. 2d 412, 416 (1965) (holding that the statute authorizing the state board of health to seek an injunction for the unlicensed practice of medicine "by implication assumes

11

there was not an adequate remedy at law and that the injury was irreparable"). The

defendants countered that the MCPA, while including the phrase "has used," did not cover

past conduct.[7] The chancellor was persuaded by the defendants' argument and what she

described as "the official comment to the MCPA" that "show[ed] the legislative intent was

not to enjoin conduct that was not ongoing as of the filing of the Complaint." Ultimately,

the chancellor concluded the State had failed to state a valid claim for injunctive relief

because "the factual allegations in the [State's] Complaint are too remote in time . . . ."

¶20.   While the chancellor focused on the statute's inclusion of the phase "has used" and

its historical background, we take a different approach when considering the sufficiency of

---

[7] The MCPA was patterned after the Uniform Trade Practices and Consumer Protection Law (Model Act), the defendants asserted. Section 5 of the Model Act provides

> Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by Section 2 of this Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary or permanent injunction the use of such method, act or practice, upon the giving of appropriate notice to that person.

And as the Model Act's commentary explained,

> adding the words "has used" in the phrase which authorizes the attorney general to proceed when he has reason to believe that any person 'is using, has used, or is about to use' any method, etc., which is unlawful . . . [was meant to] obviate the problem which might occur if a defendant contends that he discontinued the alleged practice some days before trial, and that the prosecutor has failed to show continuance of the unlawful practice up to the and through the day of trial.

So, the defendants reasoned, the phrase "has used" does not point to any and all past conduct but rather covers only past conduct that had continued through the filing of the complaint but ceased before injunctive relief was obtained.

the State's MCPA claim.[8] *See Trigg*, 266 So. 3d at 619 (holding that, when reviewing de novo the dismissal of a complaint, this Court is neither bound by nor even concerned with why the trial court reached its result but rather considers anew the legal sufficiency of the complaint). To be sure, the attorney general's "hav[ing] reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5" is a necessary element to bring a Section 75-24-9 action. But it is not the only element.

¶21. Section 75-24-9 requires that the attorney general have reason to believe "that proceedings would be in the public interest," and the purpose of the action must be "to restrain by temporary or permanent injunction the use of such method, act or practice." Miss. Code Ann. § 74-24-9. So in determining if the State's complaint sufficiently alleged a claim under the MCPA, the dispositive question is not whether the defendant's alleged *past*

---

[8] On appeal, the State argues—and we agree—that there is no official comment to the MCPA. The chancellor obviously misattributed the Model Act's comment as being the MCPA's official comment. But that does not mean the Model Act's comment was necessarily off-limits. When Mississippi's Legislature adopted the MCPA in 1974, it clearly drew Section 75-24-9 from Section 5 of the Model Act. So the Model Act's official comment, though not adopted by the Legislature, still was "the most informed source" as to what the Legislature intended the phrase "has used" to mean. *Holifield v. BancorpSouth, Inc.*, 891 So. 2d 241, 248 (Miss. Ct. App. 2004) (finding that, even when the Mississippi Legislature does not adopt an official comment, courts "look to official comments about uniform laws, when those laws have been adopted all but verbatim by the legislature, as the most informed source explaining provisions of the original enactment").

But resorting to the MCPA's historical background is permissible only if the phrase "has used" is ambiguous. *Williams v. Duckett (In re Guardianship of Duckett)*, 991 So. 2d 1165, 1182 (Miss. 2008). Language is ambiguous if it is susceptible to two reasonable interpretations. *Dalton v. Cellular S., Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009). And here, the phrase "has used"is arguably susceptible to two reasonable interpretations—it could mean past conduct or past conduct continuing into the present. But declaring an ambiguity and going outside the language of Section 75-24-9 is unnecessary to resolve this appeal.

conduct is covered by the phrase "has used." Rather, the controlling issue is whether the State has alleged facts that support a reasonable inference of *present or future* illegal conduct that needs to be enjoined.

¶22. Certainly, there could be cases in which the nature of the past conduct would support seeking to enjoin future conduct. *E.g.*, Order, ***Hood ex rel. State v. BASF Corp.***, No. 56863 (Rankin County, Miss., Ch. Ct. Jan. 17, 2006) (finding the "Defendant's previous acts" when combined with "[t]he lack of cooperation from the Defendant" supported the attorney general's reasonable belief "that the Defendant will use these illegal acts in the future if not monitored"). This is especially true when the defendant voluntarily ceased—or claimed to have voluntarily ceased—the alleged illegal activity *after* the injunctive action was filed. *E.g.*, ***Pullum v. Greene***, 396 F.2d 251 (5th Cir. 1968). Discontinuing the alleged illegal activity does not deprive a court of its power to grant an injunction. ***United States v. W. T. Grant Co.***, 345 U.S. 629, 633, 73 S. Ct. 894, 897, 97 L. Ed. 1303 (1953). After all, "[t]he purpose of an injunction is to prevent *future* violations, and, of course, it can be utilized even without a showing of past wrongs." ***Id.*** (emphasis added) (citing ***Swift & Co. v. United States***, 276 U.S. 311, 326, 48 S. Ct. 311, 314, 72 L. Ed. 587 (1928)).

¶23. But to obtain an injunction, "the moving party must satisfy the court that relief is needed." ***Id.*** "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." ***Id.*** The fact the State seeks a statutory, versus a common-law injunction, does not change the nature of injunctive relief. The State is correct that the MCPA provides for a

14

statutory injunction, alleviating the need to plead the common-law-injunction prerequisites of no adequate remedy at law and irreparable injury. *Conway*, 173 So. 2d at 416. But statutory injunctive relief is still injunctive relief, "which requires a threat that the misconduct to be enjoined is likely to be repeated in the future." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 465 (Ca. Ct. App. 2005) (holding that California's unfair-competition statute does "not alter[] the nature of injunctive relief"). "Injunctive relief has no application to wrongs which have been completed, absent a showing that past violations will probably recur." *Id.* (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 20 (Cal. Ct. App. 2004)); *see also Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002) (holding that an injury alleged caused by a past misrepresentation could not be remedied through Georgia's Uniform Deceptive Trade Practices Act, which only provides injunctive relief). Again, based on a plain-language reading of the MCPA, its purpose is not to punish past violations but rather to restrain or enjoin unfair methods of competition through injunctive relief. Miss. Code Ann. § 75-24-9.

¶24.    In this case, the State's factual allegations fail to support any reasonable danger of future conduct by the defendants that will violate the MCPA. The State's complaint provided no factual basis for the alleged illegal activity continuing past 2010. According to the complaint, those responsible were convicted of federal crimes and had to pay hefty penalties to the tune of hundreds of millions of dollars. Based on these specific allegations, the State has simply failed to allege *any* facts that support the danger of a present or future unfair trade practice warranting injunctive relief to protect the public's interest. Instead, it appears that

15

the State has attempted to use the MCPA impermissibly to redress completed wrongs.

¶25. Because, to use the chancellor's words, the State's allegations of the price-fixing conspiracy are simply "too remote" to support a claim that injunctive relief is needed, we affirm the dismissal of the State's MCPA claim. *See Madrid*, 130 Cal. App. 4th at 462-66 (holding that a complaint that referred to actions that only happened in the past failed to state a claim for injunctive relief under California's consumer-protection statute because the complaint did not allege any facts that another incident is likely to occur).

## II.    Count II—Mississippi Antitrust Act (MAA)

¶26. We also affirm the dismissal of the State's Mississippi Antitrust Act (MAA) claim based on failure to allege any intrastate activity.

¶27. Section 75-21-1 defines a trust or combine as

> a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others, when inimical to public welfare and the effect of which would be:
>
> (a)    To restrain trade;
>
> (b)    To limit, increase or reduce the price of a commodity;
>
> (c)    To limit, increase or reduce the production or output of a commodity;
>
> [or]
>
> (d)    To hinder competition in the production, importation, manufacture, transportation, sale or purchase of a commodity . . . .[9]

---

[9] Under Section 75-21-1, a trust also exists when the effect of the agreement is

(e)    To engross or forestall a commodity;

Miss. Code. Ann. § 75-21-1(a)-(d) (Rev. 2016). Section 75-21-1 makes it illegal to create

or become part of a trust so defined, subjecting violators to criminal penalties. And Section

75-21-7 authorizes the attorney general to pursue civil penalties ranging between $100 to

$2,000 per violation.[10] Miss. Code Ann. § 75-21-7 (Rev. 2016).

¶28. In 1914, this Court handed down the leading case on Mississippi's antitrust statute,

***Standard Oil Co. of Kentucky v. State***, 107 Miss. 377, 65 So. 468, 471 (1914), *overruled in*

*part on other grounds by* ***Mladinich v. Kohn***, 250 Miss. 138, 164 So. 2d 785 (1964).[11] In

(f)     To issue, own or hold the certificate of stock of any trust and combine within the spirit of this chapter knowing it to be such at the time of the issue or the acquisition or holding such certificate; or

(g)     To place the control to any extent of business or of the proceeds or earnings thereof, contrary to the spirit and meaning of this chapter, in the power of trustees, by whatever name called; or

(h)     To enable or empower any other person than themselves, their proper officers, agents and employees to dictate or control the management of business, contrary to the spirit and meaning of this chapter; or

(i)     To unite or pool interest in the importation, manufacture, production, transportation, or price of a commodity, contrary to the spirit and meaning of this chapter.

Miss. Code Ann. § 75-21-1(e)-(i) (Rev. 2016).

[10] The attorney general may also seek an injunction in chancery court. Miss. Code Ann. § 75-21-1. But, in contrast to the MCPA, the ability to recover civil penalties is not tied to bringing an action for injunctive relief. *See* Miss. Code Ann. § 75-21-9.

[11] Mississippi's antitrust statute was first enacted in 1892 and can be traced through the following statutes: Miss. Code (1972) § 75-21-1; Miss Code (1942) § 1088; Miss. Code (1930) § 3436;1926 Miss. Laws ch. 182; Hemingway's Code (1917) §§ 3281, 3282; 1908 Miss. Laws chs. 88, 119; Miss. Code (1906) § 5002; Miss. Code (1892) § 4437. The version of the antitrust statute in effect in 1914 is nearly identical in the activity it prohibits. *Compare* 1908 Miss. Laws ch. 119 (amending Miss. Code (1906) § 5002) *with* Miss. Code

17

***Standard Oil***, this Court held that "a conspiracy to monopolize trade in any commodity to be punishable under state laws must have as one of its objects a monopoly in the intrastate trade therein to be accomplished in part at least by transactions which are also wholly intrastate." ***Id.*** at 471.

¶29.    The State alleged that Standard Oil of Kentucky had engaged in a conspiracy to monopolize both inter and intrastate sale of petroleum. ***Id.*** at 470. The conspiracy's object was achieved in Mississippi, the complaint alleged, by selling Standard Oil's products on the same day in different locations in Mississippi at different prices for the purpose of creating a monopoly. ***Id.***  While all the petroleum in Mississippi had been  imported—i.e., came in by way of interstate commerce—it was only after Standard Oil's products became "incorporated into the general mass of property" in Mississippi that the company sold or distributed the petroleum at anticompetitive prices in order to further its monopoly. ***Id.***  This Court agreed with the trial court that the State's complaint could proceed because "[t]he controversy here complained of, ha[d] as one of its objects a monopoly of that portion of the trade in petroleum products which lies wholly within the state of Mississippi, to be accomplished in part at least by transactions lying wholly within the state," and thus was "punishable under the laws thereof." ***Id.*** at 471; *see also* ***BASF Corp.***, No. 56863 (trial court's finding the State's alleged price-fixing scheme for vitamins to be analogous to ***Standard Oil*** because the State alleged the defendant's vitamins were imported into Mississippi and then sold through the defendant's sales representative to Mississippi

---

Ann. § 75-21-1 (Rev. 2016).

customers at anticompetitive prices).

¶30.    Applying **Standard Oil**, the chancellor dismissed the State's MAA claim for failure to allege any wholly intrastate conduct.  As with the MCPA claim, while the State broadly alleged the defendant manufacturers restrained trade, increased prices, and hindered competition "in the State of Mississippi," the complaint contained no allegation that the defendant manufacturers sold AWHS in Mississippi or that the auto manufacturers, suppliers, or distributors who bought the AWHS were in Mississippi.  The complaint did assert that the defendants "manufactured, marketed, and/or sold [AWHS] that were purchased, directly or indirectly, throughout the State of Mississippi after they became a part of interstate and intrastate commerce.  But the chancellor determined "[t]his conclusory allegation [wa]s not sufficient to withstand a [Rule] 12(b)(6) motion."

¶31.    On appeal, the State does not argue against the application of **Standard Oil** to its MAA claim.  Rather, the State argues the chancellor *misapplied* this case.

¶32.    First, the State claims the chancellor, as part of her reliance on **Standard Oil**, "applied a 1914 standard for a demurrer" and "ignored the fact that the State of Mississippi became a 'notice pleading' state, with the adoption of the of the Mississippi Rules of Civil Procedure, and more specifically, Rule 8."  But the State's assertion is unfounded.  It is clear from her order that the chancellor relied on **Standard Oil** for guidance on what is *substantively* required under Mississippi's antitrust statute.  She did not apply **Standard Oil** for its demurrer standard.

¶33.    Neither did she ignore Rule 8.  Even under Rule 8's liberal "short and plain statement"

19

requirement, the complaint still must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 73 n.6 (Miss. 2017) (quoting *Carter v. Reddix*, 115 So. 3d 851, 856-57 (Miss. Ct. App. 2012)). And according to *Standard Oil*, a material element to an MAA claim is that the illegal objective of the trust "be accomplished in part at least by transactions lying wholly within the state." *Standard Oil*, 65 So. at 471. In Count II of the complaint, the State does not allege any "wholly intrastate" transaction to support its allegation that the defendant manufacturers violated Section 75-21-1. Elsewhere, the State alleges the AWHS "were purchased, directly or indirectly, throughout the State of Mississippi after they became a part of interstate and intrastate commerce." But the State does not allege any "wholly intrastate" transactions by the defendants. Therefore, dismissal was proper under Rule 12(b)(6).[12]

¶34. Second, the State alternatively argues the chancellor misapplied *Standard Oil* as applying to "wholly intrastate conduct." The State argues the fact the alleged trust was also interstate does not defeat an MAA claim. The State is correct in one respect. The alleged conduct does not have to be *exclusively* intrastate to be actionable under the MAA. *Standard Oil*, 65 So. at 470 ("A conspiracy . . . having for its object the creation of a monopoly in both the inter and intra state commerce in a commodity is necessarily subject to the law both of the general government and of the state affected thereby."). But the conduct does have to be

---

[12] As further evidence the chancellor followed the Mississippi Rules of Civil Procedure, the chancellor did not dismiss the MAA claim with prejudice. Instead, applying Rule 15, she permitted the State thirty days to amend its MAA claim, which it chose not to do. *See* M.R.C.P. 15(a).

*partly* intrastate. Or, as this Court stated in **Standard Oil**, "to be punishable under state laws," the illegal monopoly must "be accomplished in part at least by transactions which are . . . wholly intrastate." **Id.** at 471.

¶35. Contrary to the State's assertion, it was not the inclusion of allegations of interstate conduct but rather the omission of allegations of wholly intrastate transactions that led to its MAA claim being dismissed. In contrast to **Standard Oil**, the State's complaint does not allege the AWHS conspiracy was accomplished at least in part by transactions lying wholly within Mississippi. While it mentions, by way of example, both Nissan and Toyata had OEMs in Mississippi, the State neither alleges the defendant sold AWHS in Mississippi nor that the OEMs, suppliers, or distributors that directly purchased AWHS from the defendants were in Mississippi.

¶36. Notably, the State did not even amend its complaint when given the opportunity to make any allegations of intrastate transactions. Instead, the State chose to appeal. And on appeal, the State merely claims its broad assertion that the conspiracy existed in both interstate and intrastate commerce was sufficient under Rule 8 to give the defendants notice of the conduct that allegedly violated Section 75-21-1 and entitled the State to civil penalties on a per-violation basis under Section 75-29-9. "While [Rule] 8 has eliminated the technical forms of pleadings required in years past, notice pleadings are still required to place the opposing party on notice of the claim being asserted." **Estate of Stevens v. Wetzel**, 762 So. 2d 293, 295 (Miss. 2000). Here, by failing to allege any wholly intrastate transactions, the State's complaint falls short of this requirement.

21

### III. Count III—Civil Conspiracy

¶37. Finally, we affirm the chancellor's dismissal of the State's civil-conspiracy claim.

¶38. Because the State had no statutory claims, the chancellor ruled the State had no civil-conspiracy claim, citing *Wells v. Shelter General Insurance Co.*, 217 F. Supp. 2d 744, 754-55 (S.D. Miss. 2002). On appeal, the State does not argue that its civil-conspiracy claim was based on anything other than its statutory claims. In fact, the State argues on appeal that the chancellor erred *because* it "relied on the Defendants' violations of the MCPA and MAA as the underlying wrongs in its claim for civil conspiracy."

¶39. In claiming error, the State relies on this Court's recent decision in *Rex Distributing Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019). As in this case, the plaintiff in *Rex Distributing*, in addition to a statutory-violation claim, brought a civil-conspiracy claim based on the alleged statutory violation. The defendant argued this count had to be dismissed because there was no underlying *tort*. This Court rejected that argument because "there [wa]s an underlying *wrong*"—Anheuser Busch's alleged violation of the Beer Industry Fair Dealing Act. *Id.* at 455 (emphasis added). But, in sharp contrast to this case, the *Rex Distributing* plaintiff's alleged statutory claim *survived* Rule 12(b)(6) dismissal. *Id.* at 451. That is not the case here. In this case, the State's complaint failed to state a claim on which relief can be granted under the MCPA or MAA. So, unlike *Rex Distributing*, there is no alleged underlying wrong.

¶40. Because the State's statutory claims do not survive Rule 12(b)(6), its civil-conspiracy claim based solely on these alleged statutory violations cannot either. *Cf. In re Microsoft*

*Corp. Antitrust Litig.*, No. CIV. JFM 03-743, 2003 WL 22070561, at *3 (D. Md. Aug. 22, 2003) (dismissing a civil-conspiracy claim based on a non-viable MAA claim).

¶41. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**